Slip Op. 08-36

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| INTERNATIONAL CUSTOM PRODUCTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | **Before: Gregory W. Carman, Judge** <br><br> Court No. 07-00318 |

Mayer Brown LLP (Andrew A. Nicely and Simeon M. Kriesberg) for Plaintiff.

Jeffrey S. Bucholtz, Acting Assistant Attorney General; Jeanne E. Davidson, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Edward F. Kenny), and Yelena Slepak, of counsel, Office of Assistant to Chief Counsel, International Trade Litigation, Department of Homeland Security, U.S. Customs and Border Protection, for Defendant.

March 31, 2008

## OPINION & ORDER

CARMAN, JUDGE: Before the Court is the USCIT Rule 12(b)(5) motion of Defendant (the "Government") to dismiss Plaintiff's action for failure to state a claim upon which relief can be granted.[1] Plaintiff, International Custom Products ("ICP"), alleges that U.S.

---

[1]The Government actually moved under USCIT Rule 12(b)(6) to dismiss Plaintiff's action for failure to state a claim upon which relief can be granted. This being one

(continued...)

Customs and Border Protection ("Customs") revoked a classification ruling previously

given to ICP, resulting in a different classification of the product ICP imported and a

significantly higher applicable tariff.  ICP alleges that Customs's conduct violated

various laws: specifically, the statutory provision pertaining to revocation of

classification rulings, the Administrative Procedure Act, and the Due Process clause of

the Fifth Amendment to the Constitution.  Certain of these claims do not state a claim

upon which relief can be granted.  However, others do.  As a result, the Court grants in

part and denies in part the Government's motion.


### FACTUAL BACKGROUND

ICP is an importer and distributor of products sold to processed food

manufacturers.  In April 1999, ICP began importing "white sauce," which is a milkfat-

based product used sauces, salad dressings, and other food products.  Prior to

commencing importation of white sauce, ICP requested and received a ruling from

Customs on the classification of white sauce, which issued on January 20, 1999, as New

York letter ruling ("NYLR") D86228.  The ruling classified the white sauce under

(...continued)
instance where this Court's rules do not track the Federal Rules of Civil Procedure, the
ground for dismissal found in USCIT Rule 12(b)(6) is a plaintiff's failure to join a
necessary party.  The section of USCIT Rule 12 pertaining to failure to state a claim
upon which relief can be granted is, in fact, USCIT Rule 12(b)(5), and the Court treats
the Government's motion as having been filed under that rule.

subheading 2103.90.9060 of the Harmonized Tariff Schedule of the United States

("HTSUS"), which has since been renumbered as subheading 2103.90.9091.[2]  In reliance

on the ruling, ICP alleges that it entered into a three-year purchase agreement with its

foreign supplier and a three-year supply agreement with its largest customer.  ICP also

alleges that it relied on the advance ruling by making preparations to commence a food-

manufacturing business in the United States, including purchasing a plant site and

conducting product research and development.

In March 2004, Customs notified ICP that it was initiating a tariff rate

investigation of ICP's white sauce.  Based on its investigation, and without providing

for notice and comment, Customs issued a notice to ICP in April 2005 (called a "Notice

of Action").  The April 2005 Notice of Action stated that all 86 of ICP's then-

unliquidated entries of white sauce, as well as any future entries, would be classified

under subheading 0405.20.3000 rather than under subheading 2103.90.9060.[3]  The

change in classification substantially increased the applicable tariff.[4]  On May 6, 2005,

Customs liquidated 60 out of the 86 entries listed in the Notice of Action.  A few days

---

[2]HTSUS subheading 2103.90.9060 is the residual category covering "sauces and preparations therefor" not otherwise specified in the tariff heading, and carries a duty rate of 6.4% ad valorem.

[3]HTSUS subheading 0405.20.3000 covers "dairy spreads," and carries a duty rate of $1.996 per kilogram plus applicable safeguard duties.

[4]ICP alleges that as a result of Customs's changed classification, duties on ICP's imports increased 2400%.

later, and without paying the tariff duties or filing a protest with Customs, ICP filed suit

at this Court, alleging jurisdiction under 28 U.S.C. § 1581(h).[5]  As in this case, ICP

complained that Customs had unlawfully revoked ICP's classification ruling.  The court

sua sponte found jurisdiction under this Court's residual jurisdiction provision,

28 U.S.C. § 1581(i), and ruled in favor of ICP.  Int'l Custom Prods., Inc. v. United States,

29 CIT __, __, 374 F. Supp. 2d 1311, 1333 (2005) ("ICP I").  On appeal, the Court of

Appeals for the Federal Circuit held that this Court lacked jurisdiction under section

1581(i) to hear ICP's challenge, vacated the trial court's decision, and ordered the trial

court to dismiss ICP's complaint for lack of jurisdiction.[6]  Int'l Custom Prods., Inc. v.

United States, 467 F.3d 1324, 1328 (Fed. Cir. 2006).

Also during 2005, ICP made 11 additional entries of white sauce, one of which,

Entry Number 180-0590029-7, is the subject of this action.  At the time of entry, ICP

posted a bond for the 11 entries corresponding to the rate that would apply were the

entries to be classified in accordance with ICP's classification ruling.  However, Customs

sought to increase the bond for the 11 entries, as well as any future entries, to

correspond to the higher tariff rate indicated in the April 2005 Notice of Action.  In

---

[5]Section 1581(h) of title 28, U.S. Code, provides for judicial review of, among other things, classification rulings, but only if suit is filed "prior to the importation of the goods involved." 28 U.S.C. § 1581(h) (2000).

[6] In the interim between the trial and appellate courts' decisions, Customs published notice that it planned to revoke ICP's classification ruling.  Following a comment period, Customs did so on November 2, 2005, with an effective date of January 2, 2006.

response, ICP filed a second action at this Court ("ICP II"). Following the court's grant of a preliminary injunction against increasing the bond, the entries were released from warehouse. The court then dismissed the action for lack of a justiciable controversy regarding the bond because the 11 entries had been released under the old bond requirements, and future imports were speculative. Int'l Custom Products, Inc. v. United States, 29 CIT __, __, 2005 WL 2980587, at *4-5 (2005). ICP did not appeal the decision.

Then, in 2007, Customs issued a second Notice of Action stating that, like the prior entries, the 11 entries made during 2005 would be liquidated at the higher tariff rate indicated in the April 2005 Notice of Action. Customs liquidated the entry that is the subject of this action on June 29, 2007; ICP protested the liquidation on July 26, 2007, and thereafter filed suit in this Court. In the main, ICP contends that Customs should have liquidated the entry consistently with ICP's classification ruling, rather than at the higher rate listed in the Notices of Action. The particular claims raised by ICP will be addressed below.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(a) (2000), which provides for judicial review of protests denied by Customs.

STANDARD OF REVIEW

In deciding a USCIT Rule 12(b)(5) motion to dismiss for failure to state a claim upon which relief can be granted, the court accepts as true the facts alleged in the plaintiff's pleading and construes all inferences in the plaintiff's favor. United States v. Ford Motor Co., 497 F.3d 1331, 1336 (Fed. Cir. 2007); Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991). Dismissal for failure to state a claim upon which relief can be granted is proper if the plaintiff's factual allegations are not "enough to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. __, __, 127 S. Ct. 1955, 1965 (2007) (citations omitted).

DISCUSSION

Customs moves to dismiss each of the five counts in ICP's complaint for failure to state a claim upon which relief can be granted. For the reasons discussed below, the Court grants Customs's motion as to Counts III and IV of ICP's Complaint, and denies the motion as to Counts I, II, and V.

I.     **Count I**

ICP's first claim is that the April 2005 Notice of Action issued by Customs violated 19 U.S.C. § 1625(c)(1) (2000). ICP alleges that the Notice of Action effectively revoked the classification ruling Customs had given to ICP, and that the revocation was

unlawful because ICP was not first provided notice and an opportunity to comment, and because the revocation was applied retroactively. (See Compl. ¶¶27-33.)

Section 1625(c)(1) of title 19, U.S. Code, provides that before Customs may issue an "interpretive ruling or decision" that would modify or revoke a prior interpretive ruling or decision, Customs must publish notice of its intent to do so, and give interested parties an opportunity to comment. Section 1625(c)(1) also provides that any modification or revocation shall not become effective until 60 days after the final interpretive ruling or decision is published.

Customs argues that section 1625(c)(1) does not apply here, and that, therefore, ICP has failed to state a claim upon which relief can be granted. First, Customs contends that the April 2005 Notice of Action does not constitute an "interpretive ruling or decision." Customs argues that Congress intended the phrase "interpretive ruling or decision" to "cover only interpretive documents like rulings, ruling letters, internal advice memoranda, and protest review decisions," but not Notices of Action. (Def.'s Mot. to Dismiss 15.) Second, Customs argues that the April 2005 Notice of Action did not "effectively revoke" ICP's classification ruling. (Id. at 20-24.) The Court will address both arguments below.

A.

The first question facing the Court is whether the April 2005 Notice of Action issued by Customs is an "interpretive ruling or decision." Customs argues that

Congress did not intend "decision" to mean <u>any</u> decision made by Customs, but rather, only certain types of decisions. (Def.'s Mot. to Dismiss 12.) The decisions Customs alleges Congress intended to cover are "interpretive, instructive, and far reaching directives" issued by Customs headquarters. (<u>Id.</u> at 16.) Customs maintains that a Notice of Action does not meet these requirements because it is merely a courtesy to importers, involves only a specific entry, and is issued at the port level. Customs also insists that it would be unworkable for Customs to be required to provide for notice and comment before it issues a Notice of Action.

When faced with a question statutory interpretation, the first task of a court is to identify "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." <u>Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 843-44 (1984). To determine whether Congress has directly spoken as to the meaning of a statutory term, a court "must utilize the 'traditional tools of statutory construction,'" beginning with an inquiry into the ordinary meaning of the text itself. <u>Cal. Indus. Prods., Inc. v. United States</u>, 436 F.3d 1341, 1353 (Fed. Cir. 2006) (<u>quoting</u> <u>Timex V.I., Inc. v. United States</u>, 157 F.3d 879, 882 (Fed. Cir. 1998)). Here, the ordinary meaning of the term "interpretive ruling or decision" could be limited to Customs's proposed definition, or could encompass a wide swath of determinations, and the statute does not define the term.

Yet, even if a statute's text does not explicitly address the precise question, "the intent of Congress may be [nonetheless] clear." Id. The meaning of an undefined or otherwise ambiguous statutory term "may be discerned by looking to the provisions of the whole law, and to its object and policy." Id. (internal brackets and quotation marks omitted). Where multiple meanings are plausible, a court must adopt the interpretation that furthers the statutory purpose, rather than undermines it. Shapiro v. United States, 335 U.S. 1, 31 (1948) ("[W]e must heed the equally well-settled doctrine of this Court to read a statute, assuming that it is susceptible of either of two opposed interpretations, in the manner which effectuates rather than frustrates the major purpose of the legislative draftsmen.").

The purpose of section 1625 is to provide importers with security and stability regarding Customs's policies and practices, and to provide transparency when Customs decides to change those policies and practices. The provision of section 1625 relating to modification and revocation, section 1625(c), was added by the Customs Modernization Act (the "Mod Act"), Pub. L. 103-182 (codified primarily in scattered sections of 19 U.S.C.). The then-Commissioner of Customs testified before Congress that changes to the law were needed because "[i]mporters have the right to be informed about Customs rules and regulations, and its interpretive rulings and directives, and to expect certainty that the ground rules will not be unilaterally changed by Customs without the proper notice and opportunity to respond." Customs Modernization and Informed

Compliance Act: Hearing on H.R. 3935 Before the House Comm. on Ways and Means,

Subcomm. on Trade, 102d Cong. 91 (1992) (statement of Comm'r Carol Hallett, U.S.

Customs Service) (quoted in Precision Specialty Metals, Inc. v. United States, 25 CIT

1375, 1388, 182 F. Supp. 2d 1314, 1328 (2001)).  In particular, "[s]ection 1625(c)'s notice

and comment requirements are intended to ensure that the interested public has notice

of a proposed change in Customs's policy and to allow the public to make comments on

the appropriateness of the change and to modify any current practices that were based

in reliance on Customs's earlier policy."  Sea-Land Serv., Inc. v. United States, 239 F.3d

1366, 1373 (Fed. Cir. 2001); accord Calif. Indus. Prods., Inc. v. United States, 28 CIT 1652,

1663, 350 F. Supp. 2d 1135, 1146 (2004) ("[T]here is no dispute that the purpose of

19 U.S.C. § 1625 is to provide predictability for importers in structuring their business

while also retaining flexibility for Customs in the exercise of its administrative

authority.") (internal quotation and citation omitted), aff'd, 436 F.3d 1341 (Fed. Cir.

2006).

Customs's position that a Notice of Action is not an "interpretive ruling or

decision" that triggers application of section 1625(c) is inconsistent with the purpose of

the statute.  If the Court were to adopt that interpretation, the protections of section

1625(c) would be contingent on the instrument by which Customs informs an importer

of a modification or revocation.  This elevates form over function.  Further, that

interpretation would allow Customs to manipulate when section 1625(c) would apply

by strategically choosing how to inform an importer of a modification or revocation.

Finally, as a practical matter, Customs regularly communicates its decisions using

Notices of Action.  See, e.g., Precision Specialty Metals, 182 F. Supp. 2d at 1318 (using

Notice of Action to notify importer of denial of drawback).  Excluding Notices of Action

from the purview of section 1625(c) would create an exception large enough to swallow

the rule.

A review of Customs's conduct culminating in the April 2005 Notice of Action

demonstrates how untenable it would be to categorically exclude Notices of Action

from judicial review under section 1625.[7]

> In August 2004, Customs personnel discussed ICP's ruling in
> several internal communications.  In one such communication, the writer
> stated that the Customs National Import Specialist ("NIS") supported her
> position that "because of the binding ruling, we cannot just RA [rate
> advance] the recent entries."  The same communication continued and
> stated that before a rate advance Customs must have the binding ruling
> revoked by Customs Headquarters.  In December 2004, the Chief of the
> Special Products Branch of Customs National Commodity Specialist
> Division stated in a letter to the Director of the Commercial Rulings
> Division at Customs Office of Regulations and Rulings ("OR & R") that
> "we believe the ruling [NY D86228] is flawed and should be revoked." . . .
> The Court further notes that in December 2004 one Customs official stated
> that Customs "did not have time to go through the 625 [section 1625(c)
> notice and comment] procedures" and that Customs knew "from the
> discussions we have had in branch meetings that our superiors have been

---

[7]The following passage is pulled from the court's recitation of the facts in ICP I.  While
the ICP I court made its decision on review of the administrative record, and the
decision here will be decided on the basis of the record before the court, the underlying
facts of the two cases are the same.

all over the place on 625 issues and the courts have been no help in resolving the problems but have simply added to them."

By March 2005, Customs had seemingly abandoned the idea of modifying or revoking ICP's ruling on white sauce. On March 10, 2005, Customs Chief of the Special Products Branch of the National Commodity Specialist Division issued a memorandum to Customs Associate Chief Counsel "on the product for which a tariff classification has been requested." The writer stated that because ICP's ruling "was based on an erroneous assertion of facts as to the use of the product, the classification of the product under a principal use provision, which relied on those erroneous facts, is also erroneous, and may not be relied upon by the importer." . . . [A]nother Customs official was unconvinced and stated that based on his experience, "unless we can demonstrate that the company committed fraud when requesting the ruling, OR & R is going to have to revoke the ruling, issue and public notice, and give the company time to adjust [its] import practices based on the changed classification. In other words, I doubt that they will be supportive of a rate advance, when the importer can claim [it was] relying on a ruling issued by Customs."

ICP I, 29 CIT at __, 374 F. Supp. 2d at 1328-29 (internal citation omitted).

We know which side of the debate prevailed. Customs did not follow the section 1625(c) notice-and-comment procedures. Instead, Customs issued the April 2005 Notice of Action informing ICP that it would liquidate ICP's white sauce entries under HTSUS subheading 0405.20.3000. Customs engaged in a months-long deliberative process, and the result of that deliberative process was the April 2005 Notice of Action. That Customs decided to inform ICP of the determination in a Notice of Action, rather than some other instrument, does not change its nature. The April 2005 Notice of Action was a decision contemplated at length, and it represented the agency's formal position regarding the applicability and validity of ICP's classification letter. For Customs to

argue here that it was something less than that is disingenuous.  (See Def.'s Mot. to

Dismiss 9-10 (arguing that a Notice of Action is merely a "courtesy notice to an importer

that on liquidation of that individual entry, its duty rate will be increased").)

Customs points to the decision of the Court of Appeals for the Federal Circuit in

California Industrial Products, Inc. v. United States, 436 F.3d 1341 (2006), as support for

the argument that a Notice of Action is not an "interpretive ruling or decision."  In that

case, the court reasoned that section 1625(c) should be construed consistently with

section 1625(a).  Cal. Indus. Prods., 436 F.3d at 1351.  Because section 1625(a) refers to a

"protest review decision," the court concluded that the term decision "in the phrase

'ruling or decision' in 19 U.S.C. § 1625(c), includes a 'protest review decision.'"  Id.

(emphasis added).  However, the court did not hold that the term decision was limited

to a protest review decision, which is the argument that Customs makes here.  For the

above-stated reasons, the Court declines to read section 1625(c) in the limited manner

Customs proposes, which would undermine the purpose of the statute.  See Shapiro v.

United States, 335 U.S. 1, 31 (1948) ("[W]e must heed the equally well-settled doctrine of

this Court to read a statute, assuming that it is susceptible of either of two opposed

interpretations, in the manner which effectuates rather than frustrates the major

purpose of the legislative draftsmen.").

As when this Court was faced with this question in ICP I, the Court concludes

that the April 2005 Notice of Action was an "interpretive ruling or decision" within the

meaning of section 1625(c). "This Court will not adopt a construction of § 1625 that,

contrary to congressional intent, treats the statutory procedures as avoidable at the

whim of Customs and thus renders them meaningless." ICP I, 29 CIT at __, 374 F. Supp.

2d at 1327.

B.

Customs additionally argues the April 2005 Notice of Action did not "effectively

revoke" ICP's classification ruling. In circular fashion, Customs argues that "very

stringent [public notice and comment] procedures must be undertaken to revoke a

ruling; unless and until Customs follows these regulations, and revokes the ruling, the

importer's ruling remains binding." (Def.'s Mot. to Dismiss 21-22.) This argument by

Customs confuses the issue. It is true that, as a legal matter, an importer's classification

ruling remains binding until Customs complies with the statutory and regulatory

requirements found in 19 U.S.C. § 1625(c)(1) and 19 C.F.R. § 177.12. Yet, as a practical

matter, Customs may revoke a classification ruling by its conduct, without complying

with the applicable statute and regulations. For example, Customs could tell an

importer that the agency revoked the importer's classification ruling and that the

importer can no longer rely on the ruling when importing merchandise. This would

surely be a revocation of the classification ruling, even if Customs failed to comply with

the requirements of section 1625. Alternatively, Customs could consistently liquidate

merchandise in a manner inconsistent with a classification ruling, fail to reliquidate the

merchandise when the classification ruling is brought to its attention, and inform the

importer that it would continue to classify any future imports similarly. And this is

precisely what ICP contends happened here.[8] Customs's failure to comply with section

1625 does not insulate its conduct from judicial scrutiny; rather, that failure is the basis

for ICP's action. The Court need not spend any more time on this objection of Customs.

In sum, the Court concludes that the April 2005 Notice of Action issued by

Customs is an "interpretive ruling or decision" within the meaning of section 1625. In

addition, the Court concludes that, if the actions alleged of Customs are proven,

Customs effectively revoked ICP's classification ruling by its conduct in connection with

the white sauce importations. As a result, the Court denies Customs's motion to

dismiss as to Count I of ICP's Complaint.

## II.    Count II

Count II of ICP's Complaint alleges that Customs violated 19 U.S.C. § 1625(c)(2).

Section 1625(c)(2) mandates notice-and-comment procedures identical to those required

by section 1625(c)(1), but is applicable where Customs contemplates issuing an

---

[8]ICP alleges that it had a classification ruling for its imports of white sauce stating that the white sauce would be classified under HTSUS subheading 2103.90.9060; that Customs informed ICP in an April 2005 Notice of Action that Customs would liquidate all of ICP's entries (past and future) under HTSUS subheading 0405.20.3000; that Customs reiterated in a second Notice of Action that it would continue to liquidate all of ICP's entries under HTSUS subheading 0405.20.3000; and that Customs failed to respond when ICP protested the liquidations on the ground that they were not consistent with ICP's classification ruling.

"interpretive ruling or decision" that would "have the effect of modifying the treatment previously accorded by the Customs Service to substantially identical transactions." 19 U.S.C. § 1625(c)(2).

ICP alleges that from 1988 to April 2005, Customs consistently classified ICP's entries of white sauce under subheading 2103.90.9060, in accordance with ICP's classification ruling, and that this amounts to a "treatment" for purposes of section 1625(c)(2). (Compl. ¶ 36.) ICP alleges that Customs "effectively modified" that treatment with its decision to reclassify the white sauce, as memorialized in the April 2005 Notice of Action. ICP argues that Customs violated section 1625(c)(2) by failing to publish notice or give ICP an opportunity to comment on the modification in treatment, and by retroactively applying the modification.

As with Count I, Customs argues that section 1625(c)(2) does not apply because Customs did not issue an "interpretive ruling or decision" that would trigger the procedural requirements of section 1625(c). For the reasons given above, the Court disagrees with this argument, and denies Customs's motion to dismiss Count II for failure to state a claim upon which relief can be granted.

## III.    Count III

In Count III, ICP alleges that Customs violated law by revoking ICP's classification ruling without demonstrating a "compelling reason" for doing so. ICP argues that Customs has a policy of "not disturb[ing] its rulings in the absence of a

'compelling reason.'" (Compl. ¶ 43.)  Because Customs failed to give a "compelling

reason" for reclassifying ICP's white sauce, ICP argues that "Customs deviated from its

own announced policy and practice, in violation of law."  (Id. at ¶ 45.)

Customs counters that the agency does not need a "compelling reason" to

modify or revoke a classification ruling.  Customs argues that the "compelling reason"

standard applied to a prior version of section 1625.  Customs contends that under the

current version of section 1625, Customs can modify or revoke interpretive rulings and

decisions "if found to be in error or not in accord with the current views of Customs."

(Def.'s Mot. to Dismiss 28 (quoting 19 C.F.R. § 177.12).)  Further, Customs argues that

even when the standard applied, it only applied to "policies," not to classification

rulings.  (Id.)

First, an explanation of the origins of the "compelling reason" standard is in

order.  In 1989, Customs solicited comments regarding proposed amendments to its

regulations.  The regulations at that time stated:

> No ruling published under the provisions of this section will have the
> effect of changing either an earlier published ruling or a practice
> established by other means by imposing a higher rate of duty or charge on
> an article unless the earlier ruling or practice has been determined to be
> clearly wrong.

19 C.F.R. § 177.10(b) (1989).  In response to importers expressing concern over

Customs's proposal to remove the "clearly wrong" standard from the regulation,

Customs stated that "[u]nder relevant statutory and case law, Customs may only

disturb a practice if there exists a <u>compelling reason</u> to do so, and only then after full

consideration of public comment."  54 Fed. Reg. 31,511, 31,514 (Customs Service July 31,

1989) (emphasis added).

Customs's authority to modify or revoke rulings stems from the current version

of 19 U.S.C. § 1625.  Section 1625 was extensively modified in 1993 by the Mod Act, and

section 1625(c) is essentially a new subsection that specifies procedures for modifying or

revoking interpretive rulings and decisions.  <u>Compare</u> 19 U.S.C.A. § 1625 (1992) <u>with</u>

19 U.S.C. § 1625 (2000).  Nothing in section 1625(c) provides that Customs may only

modify or revoke a ruling or decision if it has a compelling reason to do so.  In addition,

Customs regulations interpreting section 1625(c) provide that Customs may modify or

revoke a ruling or decision "if found to be in error or not in accord with the current

views of Customs."  19 C.F.R. § 177.12 (2007).

Contrary to ICP's contention that Customs may revoke or modify only where

there exists a compelling reason to do so, Customs has endorsed in its regulations a

discretionary standard for modification or revocation.  Pursuant to <u>Chevron</u>, Customs's

regulations are accorded deference if they are a permissible interpretation of the statute.

<u>See</u> <u>Chevron</u>, 467 U.S. at 844; <u>see also</u> <u>Rust v. Sullivan</u>, 500 U.S. 173, 186 (1991) (even

"sharp breaks" in agency interpretations are permissible, so long as interpretation is

rational under the statutory scheme and the change is supported by a "reasoned

analysis").  Where, as here, the change in agency interpretation follows extensive

modifications to the underlying statute at issue, the reason for the change in

interpretation is a given.  Cf. Am. Bayridge Corp. v. United States, 22 CIT 1129, 1151, 35

F. Supp. 2d 922, 940 (1998), vacated as moot, 217 F.3d 857 (Fed. Cir. 1999) (It would be

"absurd" for agency to continue to operate under old regulations where a "significant

change" is made to the statute being administered.).

Because Customs does not need to state a compelling reason for modifying or

revoking a ruling or decision, ICP's claim that Customs failed to do so when the agency

revoked ICP's classification ruling does not state a claim upon which relief can be

granted.  As a result, the Court dismisses Count III of ICP's complaint.

## IV.    Count IV

In Count IV of its Complaint, ICP alleges that Customs violated section 553 of the

Administrative Procedure Act ("APA"), codified at 5 U.S.C. §§ 551 et seq.  Section 553 of

the APA requires agencies to give to interested parties notice and an opportunity to

comment on proposed rulemakings.  Rulemaking is defined as the "agency process for

formulating, amending, or repealing a rule," and a rule is further defined as "an agency

statement of general or particular applicability and future effect designed to implement,

interpret, or prescribe law or policy . . . ."  5 U.S.C. § 551(4), (5).  The term "rulemaking"

is used in contrast to an "adjudication," to which section 553 does not apply.  "Two

principle characteristics distinguish rulemaking from adjudication.  First, adjudications

resolve disputes among specific individuals in specific cases . . . .  Second, because

adjudications involve concrete disputes, they have an immediate effect on specific individuals . . . ." Yesler Terrace Comm'y Council v. Cisernos, 37 F.3d 442, 448 (9th Cir. 1994). "Rulemaking, in contrast, is prospective, and has a definitive effect on individuals only after the rule subsequently is applied." Id.

The Court holds that the conduct ICP alleges of Customs is properly characterized as adjudicatory in nature: this was a concrete dispute regarding the classification of certain entries of white sauce and involved only Customs and ICP. Further, the results of the dispute were applied retroactively, to the white sauce entered prior to the adjudication. Because the facts alleged by ICP in the complaint do not constitute "rulemaking," section 553 is inapplicable. Therefore, Customs did not violate section 553 by failing provide ICP with notice and an opportunity to comment. Accordingly, the Court grants the Government's motion to dismiss for failure to state a claim upon which relief can be granted as to Count IV of ICP's Complaint.

## V.      Count V

In Count V of its Complaint, ICP alleges that Customs violated the Due Process Clause of the Fifth Amendment to the U.S. Constitution. (Compl. ¶¶ 50-56.) The Fifth Amendment prohibits the government from depriving persons of "life, liberty, or property without due process of law." U.S. CONST. amend. V. ICP contends that Customs denied ICP due process when the agency revoked ICP's classification ruling by failing to comply with the procedural protections of section 1625. Customs counters

that it was not obligated to comply with section 1625 because there was no triggering "ruling or decision." (Def.'s Mot. to Dismiss 31-32.) The Court addressed this argument previously in consideration of in Counts I and II, and reiterates that this is not a valid ground upon which to dismiss the claim.

In analyzing a procedural due process claim, the threshold question is whether the plaintiff has been deprived of a life, liberty, or property interest. If the plaintiff has been deprived of a life, liberty, or property interest, the next question is what process is due. Here, ICP essentially argues that it had a property interest in having Customs classify its entries of white sauce under HTSUS subheading 2103.90.9091, absent Customs modifying or revoking ICP's classification ruling in accordance with 19 U.S.C. § 1625(c). A property interest can be derived from statute. Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972) (Property rights "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings . . . ."). ICP has therefore alleged a valid property interest.

Given the limited nature of the property right at issue, the process that is due is correspondingly limited. See Goldberg v. Kelly, 397 U.S. 254, 263 (1970) (quoting Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 895 (1961) ("'consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by

governmental action'"). Moreover, failure by the Government to comply with a statute's procedural requirements does not necessarily equate to a due process violation. See Swipies v. Kofka, 419 F.3d 709, 716-17 (8th Cir. 2005) ("Violation of a state statutory provision necessarily establishes a procedural due process violation only if the statutory provision requires the same process as federal law, and no more."); Harris v. Birmingham Bd. of Educ., 817 F.2d 1525, 1528 (11th Cir. 1987) ("[V]iolation of a state statute outlining procedures does not necessarily equate to a due process violation under the federal constitution"); Vann v. Stewart, 445 F. Supp. 2d 882, 888 (E.D. Tenn. 2006) (citing Goodrich v. Newport News Sch. Bd. 743 F.2d 225, 226-27 (4th Cir. 1984) ("The fact that a valid school policy or state law was not followed is not by itself significant in determining whether procedural due process has been violated.")). As a result, ICP faces an uphill battle in establishing that the conduct alleged of Customs violates due process.

However, the standard of review at the motion to dismiss stage is forgiving. "The question to be decided is not whether the plaintiff will prevail in its claim but whether it is entitled to offer evidence in support of its claim, since federal policy favors disposition on the proof rather than on the pleadings." Halperin Shipping Co., Inc. v. United States, 13 CIT 465, 466 (1989); accord Hoed v. U.S. Sec'y of Agric., 32 CIT __, __, 2008 WL 145019, at *1 (2008). Accordingly, the Court denies Customs's motion to dismiss as to Count V of ICP's complaint.

## VI.    Prayer for Relief

Finally, Customs argues that "much of ICP's prayer for relief should be dismissed for failure to state a cause of action upon which relief can be granted." (Def.'s Mot. to Dismiss 32.)  Customs cites no authority for the proposition that a court should, or even may, dismiss specific relief requested by a plaintiff.  That could be because the text of USCIT Rule 12(b)(5) and interpreting case law are not in Customs's corner.  A reader will observe that the motion brought by Customs is to dismiss for failure to state a claim upon which relief can be granted.  See USCIT R. 12(b)(5).  The subject of the motion—the thing to be dismissed—is the claim of the plaintiff, not the particular relief requested on that claim.  And courts have reiterated that a claim should not be dismissed "for failure to seek the technically appropriate remedy when the availability of some relief is readily apparent on the face of the complaint."  Doe v. U.S. Dep't of Justice, 753 F.2d 1092, 1104 (D.C. Cir. 1985); accord United States v. Nippon Miniature Bearing, Inc., 22 CIT 147, 148, 3 F. Supp. 2d 1448, 1450 (1998).  Nor is overreaching on the part of a plaintiff grounds for dismissal.  "[P]laintiffs frequently ask for the stars, and a complaint is not dismissable simply because its proof would at most entitle the plaintiff to something less."  Doe, 753 F.2d at 1104 n.11 (internal quotation and citation omitted).  Should ICP prevail on any of the remaining claims in its complaint, it would be entitled—at a minimum—to reliquidation of its entry of white sauce at the proper

duty rate.  Because some form of relief is readily apparent, the Court need not busy

itself now with determining whether ICP is entitled to all the relief that it requests.


CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that the Government's USCIT Rule 12(b)(5) motion to dismiss ICP's claims for failure to state a claim upon which relief can be granted is granted in part, and denied in part; and it is further

ORDERED that the motion is denied as to Counts I, II, and V of ICP's complaint; and it is further

ORDERED that Counts III and IV of ICP's complaint are dismissed.


_/s/_Gregory_W._Carman___
Gregory W. Carman


Dated: March 31, 2008
   New York, NY