# United States Court of Appeals for the Federal Circuit

---

**INTERNATIONAL CUSTOM PRODUCTS, INC.,**
*Plaintiff-Appellee*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

---

2016-1024

---

Appeal from the United States Court of International Trade in No. 1:07-cv-00318-GWC, Judge Gregory W. Carman.

---

Decided: December 15, 2016

---

GREGORY HUGH TEUFEL, OGC Law, LLC, Pittsburgh, PA, argued for plaintiff-appellee.

CLAUDIA BURKE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellant. Also represented by BENJAMIN C. MIZER, JEANNE E. DAVIDSON; AMY RUBIN, EDWARD FRANCIS KENNY, New York, NY; YELENA SLEPAK, Office of Assistant Chief Counsel, International Trade Litigation, United States Bureau of Customs and Border Protection, New York, NY.

---

Before REYNA, LINN, and WALLACH, *Circuit Judges.*

WALLACH, *Circuit Judge.*

Appellant United States ("the Government") appeals the decision of the U.S. Court of International Trade ("CIT") awarding attorney fees to Appellee International Custom Products, Inc. ("ICP") pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A) (2012). *See Int'l Customs Prods., Inc. v. United States* (*ICP VII*), 77 F. Supp. 3d 1319, 1335 (Ct. Int'l Trade 2015). We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1295(a)(5). We affirm.

## BACKGROUND

The facts and procedural history of this appeal are extensive, and a brief explanation of the nature of the action is warranted. ICP's request for attorney fees stems from litigation

> regarding the classification of certain white sauce imports under the Harmonized Tariff Schedule of the United States ("HTSUS"). Following a request from [ICP], the United States Customs and Border Protection ("Customs") issued New York Ruling Letter D86228 ("the Ruling Letter") classifying ICP's white sauce as "sauces and preparations therefor" under HTSUS 2103.90.9060 (1999). Years later, Customs issued a notice of action reclassifying all pending and future entries of white sauce as "[b]utter and . . . dairy spreads" under HTSUS 0405.20.3000 (2005) ("the Notice of Action"), which increased the tariff by approximately 2400%.

> After protesting and paying duties on a single entry, ICP filed a claim in the CIT, alleging the Notice of Action improperly revoked the Ruling

Letter without following the procedures required by 19 U.S.C. § 1625(c) (2006).

*Int'l Custom Prods., Inc. v. United States* (*ICP VI*), 748 F.3d 1182, 1182–83 (Fed. Cir. 2014). Since ICP filed its first action in 2005, the CIT has issued five separate opinions on the matter, two of which were appealed to us. *See generally Int'l Custom Prods., Inc. v. United States* (*ICP I*), 29 Ct. Int'l Trade 617 (2005) (exercising jurisdiction pursuant to 28 U.S.C. § 1581(i)(4) (2000) and finding the Notice of Action null and void); *Int'l Custom Prods., Inc. v. United States* (*ICP II*), 467 F.3d 1324 (Fed. Cir. 2006) (reversing the CIT's exercise of jurisdiction in *ICP I*, vacating on the merits, and remanding with instructions to dismiss); *Int'l Custom Prods., Inc. v. United States* (*ICP III*), 32 Ct. Int'l Trade 302 (2008) (granting-in-part and denying-in-part the Government's motion to dismiss ICP's Complaint in a new action); *Int'l Custom Prods., Inc. v. United States* (*ICP IV*), 33 Ct. Int'l Trade 79 (2009) (denying the parties' cross-motions for summary judgment); *Int'l Custom Prods., Inc. v. United States* (*ICP V*), 878 F. Supp. 2d 1329 (Ct. Int'l Trade 2012) (finding the Notice of Action null and void pursuant to § 1625(c)(1) and ordering Customs to reliquidate pursuant to the Ruling Letter); *ICP VI*, 748 F.3d 1182 (affirming *ICP V*); *ICP VII*, 77 F. Supp. 3d 1319 (awarding attorney fees to ICP pursuant to the EAJA). The case now returns to us for the third time.

## DISCUSSION

### I. Legal Standard and Standard of Review

The EAJA provides that "a court shall award to a prevailing party other than the United States fees and other expenses . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The Government's position is substantially justified if it is "justified to a degree that could satisfy a reasonable person" and has a "reasonable basis

both in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 565–66 (1988) (internal quotation marks and citations omitted). The Government's position includes the prelitigation actions of the relevant administrative agency, as well as the U.S. Department of Justice's litigation arguments. *See Smith v. Principi*, 343 F.3d 1358, 1361–62 (Fed. Cir. 2003). Although the Government's position involves both prelitigation and litigation conduct, "only one threshold determination for the entire civil action is to be made." *INS v. Jean*, 496 U.S. 154, 159 (1990) (footnote omitted).

We review the CIT's determination to award attorney fees under the EAJA for abuse of discretion. *See Chiu v. United States*, 948 F.2d 711, 713 (Fed. Cir. 1991). "[O]nly if the [CIT] erred in interpreting the law or exercised its judgment on clearly erroneous findings of material fact, or its decision represents an irrational judgment in weighing the relevant factors can its decision be overturned." *Id.* (citations omitted).

## II. The CIT Did Not Abuse Its Discretion by Awarding Attorney Fees to ICP

The CIT found that the Government's position was not substantially justified and, consequently, awarded attorney fees to ICP. *ICP VII*, 77 F. Supp. 3d at 1329–31, 1335. The CIT determined that "[t]he record, considered as a whole, establishe[d] that the [G]overment position was rooted in a desire to avoid the timely revocation process" by using the Notice of Action, rather than following the procedures of § 1625(c)(1), to improperly revoke the Ruling Letter. *Id.* at 1331. Thus, the CIT held that "the [G]overnment's position was not founded on 'a reasonable basis both in law and fact,' 'justified to a degree that could satisfy a reasonable person.'" *Id.* (quoting *Pierce*, 487 U.S. at 565).

The Government argues that the CIT abused its discretion by committing five legal errors: (1) "using an

improperly heightened legal standard," Appellant's Br. 9; (2) "reject[ing] the notion that surviving a motion to dismiss or a motion for summary judgment indicates that the surviving party has presented significant evidence that its position is substantially justified," *id.* at 11–12; (3) "improperly minimiz[ing] the significance of [the Government's] trial evidence because of [the Government's] post-trial decision not to appeal adverse factual findings," *id.* at 16; (4) "rejecting the Government's position that an EAJA award was not warranted in light of the novel or unsettled area of law upon which one of the Government's defenses was based," *id.* at 18; and (5) "find[ing] that [Customs] was not substantially justified in its actions during the administrative phase of the matter," *id.* at 21. We address these arguments in turn.

A. The CIT Did Not Apply a Heightened Legal Standard

The Government first argues that the CIT misapplied the "substantially justified" standard when it stated that "the substantial justification standard is 'slightly more stringent than a simple reasonableness standard,' and requires that the Government show that its position 'was clearly reasonable,'" because the Supreme Court rejected the "slightly more" and "clearly" standards in *Pierce*. *Id.* at 10–11 (quoting *ICP VII*, 77 F. Supp. 3d at 1324–25). According to the Government, the recitation of the "slightly more" and "clearly" standards "undermines the [CIT]'s entire substantial justification review" and, thus, "the fee award should be vacated and the matter remanded . . . with instructions to apply the proper legal standard." *Id.* at 11. We disagree.

The Government is correct that the CIT erred by reciting in the standard of review section of its opinion the "slightly more" and "clearly" standards, which the Supreme Court rejected in *Pierce*. *See* 487 U.S. at 567–68 (rejecting the "slightly more" and "clearly" standards (internal quotation marks and citation omitted)). Howev-

er, a single *reference* to an incorrect legal standard does not undermine a final decision, only its *application* does. Although the CIT *referenced* the "slightly more" and "clearly" standards once, *ICP VII*, 77 F. Supp. 3d at 1324–25 (internal quotation marks and citation omitted), it repeatedly *applied* the correct "substantially justified" standard, evaluating whether the Government's position was "justified to a degree that could satisfy a reasonable person" and had a "reasonable basis both in law and fact," *Pierce*, 487 U.S. at 565–66 (internal quotation marks and citations omitted). Indeed, the CIT repeated the word "reasonable" or its variants no less than nine times when evaluating the Government's position. *See ICP VII*, 77 F. Supp. 3d at 1324 n.1, 1329 n.3, 1330–31.

In contrast, there are no instances where the CIT actually applied the "slightly more" and "clearly" standards, as the Government acknowledged during oral argument. *See* Oral Argument at 1:33–2:11, http://oralarguments. cafc.uscourts.gov/default.aspx?fl=2016-1024.mp3 (stating that "it's true that when the [CIT] made its actual findings, it used the word 'reasonableness' and didn't restate the 'clearly reasonable[]' standard or restate the 'slightly more stringent' standard"). The Government nevertheless argues that the CIT's recitation of the heightened standards "infected" the CIT's *entire* analysis. *Id.* at 2:38. However, the Government cites no affirmative evidence in support of its argument, and speculation does not demonstrate reversible error. *See Rogers v. United States*, 877 F.2d 1550, 1557 (Fed. Cir. 1989) (holding that speculation cannot demonstrate an abuse of discretion). As a result, the CIT's lone recitation of the "slightly more" and "clearly" standards, when viewed against the remainder of the CIT's analysis, did not constitute an abuse of its discretion.

## B. Surviving Summary Judgment Alone Does Not Prove that the Government's Position Was Substantially Justified

The Government next contends that "surviving a motion for summary judgment strongly suggests that the Government's position [was] substantially justified for EAJA purposes" and that, consequently, the CIT erred by holding otherwise. Appellant's Br. 12. In particular, the Government alleges that the CIT "committed legal error" because it presented sufficient evidence to survive summary judgment, which it alleges demonstrates that the Government's position during trial was substantially justified. *Id.* at 16. In support, the Government cites to the summary judgment standards of proof articulated by the Supreme Court in *Anderson v. Liberty Lobby, Inc.*, *id.* at 12 (citing 477 U.S. 242, 249–50 (1986)), and to precedent from the Seventh Circuit indicating that surviving a motion to dismiss or motion for summary judgment *may* indicate that a position was substantially justified, *id.* at 13–14 (citing *United States v. Pecore*, 664 F.3d 1125, 1135 (7th Cir. 2011); *United States v. Thouvenot, Wade & Moerschen, Inc.*, 596 F.3d 378, 382 (7th Cir. 2010)).

As an initial matter, the Government "bears the burden of proving its position was substantially justified" to avoid the award of attorney fees under the EAJA, *Libas, Ltd. v. United States*, 314 F.3d 1362, 1365 (Fed. Cir. 2003), and *Anderson* does not hold or otherwise suggest that this burden shifts if the Government survives summary judgment. Rather, *Anderson* concerns standards of proof at the summary judgment stage, not the award of attorney fees under the EAJA. *See* 477 U.S. at 247–57.

As the Government acknowledges, we have not yet directly considered whether surviving summary judgment *ipso facto* demonstrates that the Government's position was substantially justified. When our precedent is silent on a particular question, "we may look to another circuit

for guidance and may be persuaded by its analysis," though "decisions from other circuits are not binding on this court." *Amerikohl Mining, Inc. v. United States*, 899 F.2d 1210, 1214 (Fed. Cir. 1990).

We first turn to the approach taken by the Seventh Circuit, which the Government cites. Under the Seventh Circuit's approach, surviving summary judgment *may* weigh in favor of finding that the Government's position was "substantially justified," but it is not dispositive. *See Pecore*, 664 F.3d at 1135 (stating that surviving summary judgment is "objective, *although not necessarily conclusive*, evidence" of a substantially justified position (emphasis added) (citation and footnote omitted)).[1] Indeed, the Seventh Circuit has recognized that, while surviving summary judgment creates a "presumption" of a substantially justified position under the EAJA,[2] "something might emerge at trial that showed that the [G]overment really had no case at all[,] [o]r the [trial] judge might on reflection decide that he had erred grievously in refusing to grant the . . . motion to dismiss or motion for summary judgment." *Thouvenot*, 596 F.3d at 382. Thus, even if the CIT were bound by the Seventh Circuit's standard, the

---

[1]    The Seventh Circuit's statement in *Pecore* about surviving motions to dismiss and for summary judgment was dicta. *See* 664 F.3d at 1135 (stating that the comment was a "final point[] . . . [that] bear[s] mentioning" after having determined that "the intense nature of th[e] debate suggests . . . that either party's position could be accepted as true by a reasonable person").

[2]    The Seventh Circuit cited the Eighth Circuit's decision in *EEOC v. Liberal R–II School District* to support the application of a presumption. *Thouvenot*, 596 F.3d at 382 (citing 314 F.3d 920, 926 (8th Cir. 2002)). We are not aware of any other circuits having applied a presumption similar to the Seventh and Eighth Circuits.

CIT did not abuse its discretion by determining that the Government's position was not substantially justified. Instead, the CIT properly considered "the entirety of the record . . . and the positions taken by the [G]overment as a whole," including evidence and arguments presented after the CIT denied ICP's motion to dismiss and motion for summary judgment, and determined that "the [G]overnment's position was not substantially justified." *ICP VII*, 77 F. Supp. 3d at 1329.

Our discussion of Seventh Circuit case law does not mean that we have adopted the "presumption" articulated in those decisions. Indeed, avoiding summary judgment does not necessarily mean that the position taken at that stage has a reasonable basis in law and fact. For example, pursuant to Federal Rule of Civil Procedure 56(d), "the court may . . . defer consider[ation of] the motion or deny it" when "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Such circumstances may arise because, inter alia, the party asserting Rule 56(d) did not possess all of the requisite information, necessitating discovery, or the party moving for summary judgment presented temporarily unverifiable or otherwise unusable evidence. The circumstances also may arise simply because final resolution may require the trier of fact to observe witnesses and determine their credibility. Thus, rather than attach a presumption to the Government's conduct based on a single action taken, we find it more appropriate to assess the Government's conduct in light of the entire record, as the Supreme Court has instructed. *See Jean*, 496 U.S. at 159 (explaining that 28 U.S.C. § 2412(d)(1)(A) does not refer "to separate parts of the litigation" and that courts should consider all stages of the dispute before making a single determination about the Government's conduct).

### C. The Government's Remaining Arguments Are Unpersuasive

The Government's remaining arguments similarly do not demonstrate an abuse of discretion. The Government argues that the CIT incorrectly determined that the Government conceded a factual issue (i.e., that white sauce conformed to the Ruling Letter) by deciding not to appeal this adverse factual finding. Appellant's Br. 16–18. And the Government correctly asserts that courts should not consider the Government's decision not to appeal an issue as a concession on the issue's merits. *See* Oral Argument at 3:52–5:26, http://oralarguments. cafc.uscourts.gov/default.aspx?fl=2016-1024.mp3; *see also United States v. Mendoza*, 464 U.S. 154, 161 (1984) ("Unlike a private litigant . . . , the Solicitor General considers a variety of factors, such as the limited resources of the [G]overnment and the crowded dockets of the courts, before authorizing an appeal."). However, the issue was one of many reasons the CIT determined that the Government's position was not "substantially justified" for purposes of the EAJA, and the CIT provided numerous other reasons why Customs "not only knew that it was effectively revoking the Ruling Letter, but it unreasonably ignored the requirement that a ruling letter governs liquidations until revoked." *ICP VII*, 77 F. Supp. 3d at 1330; *see id.* at 1329 (noting that "[m]ultiple officials at [Customs] saw an obvious nexus between a rate advance of the white sauce entries in a Notice of Action and revocation of the Ruling Letter and raised warnings about doing that" and that the decision "was based not on complying with the legal restraints identified by others, but on expedience" (footnote omitted)).

The Government next contends that the CIT improperly found the Government's position unjustified because "it was unsettled whether a Customs Form 29, Notice of Action, could be characterized as an 'interpretive ruling or decision' under . . . § 1625(c) such that its issuance could

trigger notice and comment procedures required for the revocation of a ruling letter." Appellant's Br. 19. According to the Government, the CIT also improperly relied on the vacated decision in *ICP I* in finding the Government's position unjustified. *Id.* at 19–20. However, the CIT's decision primarily relied on Customs officials' statements—made before the Notice of Action issued—that notice and comment was required. *See ICP VII*, 77 F. Supp. 3d at 1332 ("But *more importantly* for the question of special circumstances, the purely legal arguments about the nature of a Notice of Action, pursued to final decision by the [G]overnment's attorneys, do not appear to have been a basis for the [G]overnment's position at the time [Customs] issued the Notice of Action. The Court thus finds that the [G]overnment's position here was a *post-hoc attempt to justify a rate advance [Customs] knew to be contrary to the governing legal framework . . . .*" (emphases added)).

Finally, the Government contends that the CIT abused its discretion by finding that Customs's decision to issue the Notice of Action was not "substantially justified." Appellant's Br. 21–23. This argument is meritless. Customs was aware that notice and comment was required but, despite the legal ramifications, deliberately decided to forego it. *See, e.g.*, *ICP VI*, 748 F.3d at 1188–89 (discussing Customs's deliberations and affirming the CIT's finding that Customs was required to comply with § 1625(c)(1)); *ICP III*, 32 Ct. Int'l Trade at 309 (explaining the "months-long deliberative process" during which many Customs officials stated that the Notice of Action must comply with § 1625(c)(1)). Therefore, the CIT was well within its discretion to make this finding.

CONCLUSION

We review the CIT's determinations on whether the Government's position was "substantially justified" for abuse of discretion, *see Chiu*, 948 F.2d at 713, and the CIT did not abuse its discretion. We have considered the Government's remaining arguments and find them unpersuasive. For these reasons, the final decision of the U.S. Court of International Trade is

**AFFIRMED**

COSTS

Costs to ICP.