ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Application Under the Equal Access to Justice Act of -- | ) ) ) | |
| Michael M. Tsontos, S.A. | ) ) | ASBCA No. 63595-EAJA |
| Under Contract No. W912GB-17-D-0015 | ) | |

APPEARANCE FOR THE APPELLANT:        Paul D. Reinsdorf, Esq.
                                             Frankfurt, Germany

APPEARANCES FOR THE GOVERNMENT:  Michael P. Goodman, Esq.
                                             Engineer Chief Trial Attorney

                                             Jason H. Shippy, Esq.
                                             Engineer Trial Attorney
                                             U.S. Army Engineer Division, North Atlantic
                                             Brooklyn, NY

                                             Herbert J. Aldridge, Esq.
                                             Engineer Trial Attorney
                                             U.S. Army Engineer District, Europe

                                             David B. Jerger, Esq.
                                             Engineer Trial Attorney
                                             U.S. Army Engineer District, Baltimore

OPINION BY ADMINISTRATIVE JUDGE TAYLOR
ON APPELLANT'S EQUAL ACCESS TO JUSTICE APPLICATION

Appellant, Michael M. Tsontos, S.A. (Michael Tsontos), seeks fees and costs under the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504, because it prevailed on an appeal that determined the United States Army Corps of Engineers (USACE or the government) should have issued the Contractor Performance Assessment Reports (CPARs) to Michael M. Tsontos, S.A. Chania Sucursala Bucuresti (Tsontos Romania), the Romanian branch that performed the task orders, rather than Michael M. Tsontos, S.A. (Tsontos Greece), the parent company. *Michael M. Tsontos, S.A. Chania Sucursala Bucuresti*, ASBCA No. 63595, 24-1 BCA ¶ 38,694 (*Tsontos*). Familiarity with our prior decision is presumed. The Board concludes that Michael Tsontos is an eligible, prevailing party but the government's position was substantially justified. Accordingly, the Board denies the application.

## BACKGROUND

This appeal arose from several task orders the USACE issued to Tsontos Greece for various construction projects in Romania. *Tsontos*, 24-1 BCA ¶ 38,694 at 188,117. Tsontos Greece established a branch office in Romania to qualify for the value added tax exemption and perform the work. *Id.* The USACE and Tsontos Greece signed a bilateral modification changing the name on the contract to the Romanian branch but did not change the CAGE code.[1] *Id.* at 188,118. The government subsequently issued modifications changing the name and address on the task orders to the Tsontos Romania branch following Tsontos Romania's registration in the System for Award Management (SAM) database.[2] *Id.* The government also issued a modification on the contract finalizing the name change and replacing the Tsontos Greece CAGE code with the new Tsontos Romania CAGE code. *Id.*

The government issued several CPARs on the task orders. *Id.* at 188,119. The CPARs are intended to capture a contractor's performance information on a contract or task order for future source selection purposes. *See* Federal Acquisition Regulation (FAR) 42.1501(a), GENERAL (SEPTEMBER 2013). All the issued CPARs listed Tsontos Greece as the vendor and left the division name blank. *Tsontos*, 24-1 BCA ¶ 38,694 at 188,119. Tsontos Romania requested the government change the name on the CPARs to Tsontos Romania. *Id.* The government refused and the contractor filed an appeal with the Board. We granted the appellant's motion for summary judgment finding FAR 42.1502(a) required the government to issue the CPARs to Tsontos Romania since it was a separate branch that performed the contract work on the task orders. *Id.* at 188,123; See FAR 42.1502(a), POLICY (SEPTEMBER 2013).

## DECISION

The Board shall award fees and other expenses incurred by a qualified prevailing party unless it concludes that the agency's position was substantially justified or that special circumstances make an award unjust. 5 U.S.C. § 504(a)(1). As a partial waiver of sovereign immunity, the EAJA is to be strictly construed in favor of the United States. *Ardestanti v. I.N.S.*, 502 U.S. 129, 137 (1991).

---

[1] A Commercial and Government Entity (CAGE) Code is a five-character alpha-numeric identifier assigned by the Defense Logistics Agency as a standardized means of identifying legal entities performing government contracts.

[2] The System for Award Management (SAM) is a United States General Services Administration system that tracks consolidated data relating to government procurements.

## I. Timeliness

The parties received the Board's decision on October 31, 2024. Neither party appealed the decision to the Court of Appeals for the Federal Circuit within the 120-day limit specified at 41 U.S.C. § 7107(a)(1). Accordingly, the Board's decision became final on March 1, 2025. A party has 30 days after the decision becomes final to file its EAJA application. 5 U.S.C. § 504(a)(2). Michael Tsontos filed its EAJA application on March 13, 2025. The USACE does not question the timeliness of the application. We determine Michael Tsontos' EAJA application is timely.

## II. Status as a Party

As a corporation, Michael Tsontos qualifies as a party under EAJA if its net worth did not exceed $7,000,000 and it did not have more than 500 employees at the time it initiated the adversary adjudication. 5 U.S.C. § 504(b)(1)(B). Michael Tsontos filed its notice of appeal with the Board on April 28, 2023. As part of its EAJA application, Michael Tsontos included a declaration from Mr. Andreas Bailakis, its accountant, and a financial statement indicating Michael M. Tsontos, S.A., including the Romanian branch, had a net worth of $4,197,217.74 as of December 31, 2022 (app. br., ex. A). Mr. Bailakis also indicated that the Greek parent company and the Romanian branch collectively did not employ more than 500 employees as of April 28, 2023 (app. br., ex. A at 1). In its opposition to appellant's EAJA application, the government questioned appellant's EAJA eligibility contending Michael Tsontos did not provide evidence of its net worth as of April 28, 2023, the date it filed the appeal (gov't opp'n at 3). In its response, appellant submitted a supplemental declaration from Mr. Bailakis, along with another financial statement, showing a net worth for Michael M. Tsontos, S.A., including the Romanian branch, of $3,584,565.46 as of April 30, 2023 (app. resp., ex. D).[3] Accordingly, appellant has shown that it is an eligible party. *See K&K Indus., Inc.*, ASBCA No. 61189, 19-1 BCA ¶ 37,353 at 181,627 (financial statements covering the period in which the appeal was filed sufficient proof that the applicant is an eligible party).

## III. Prevailing Party

A party is a "'prevailing part[y]' for attorney's fees purposes if [it] succeed[ed] on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoting

---

[3] In his supplemental declaration, Mr. Bailakis states the financial statement shows a net worth of $3,134,565.46 (app. resp., ex. D at 1). This incorrect amount appears to result from Mr. Bailakis using $12,386,309.48 as the total assets instead of the $12,836,309.48 shown in the financial statement (*id.* at 2). Regardless, both numbers are below the EAJA eligibility amount of $7,000,000.

*Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978)). The Board granted appellant's summary judgment motion determining the USACE should have issued the CPARs to Tsontos Romania rather than Tsontos Greece since the Romanian branch performed the work on the task orders. The USACE does not challenge Michael Tsontos as the prevailing party. We conclude Michael Tsontos is the prevailing party on this appeal.

### IV. Substantially Justified Agency Position

The EAJA prohibits an award if the government's position was "substantially justified." 5 U.S.C. § 504(a)(1). "The Government's position is substantially justified if it is 'justified to a degree that could satisfy a reasonable person' and has a 'reasonable basis both in law and fact.'" *Int'l Custom Prods., Inc. v. United States*, 843 F.3d 1355, 1358 (Fed. Cir. 2016) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565-66 (1988). "[T]he government's position need not be 'correct,' or even 'justified to a high degree.'" *See Norris v. S.E.C.*, 695 F.3d 1261, 1265 (Fed. Cir. 2012) (quoting *Pierce v. Underwood*, 487 U.S. at 565, 566 n.2 (1988). "Whether or not the position of the agency was substantially justified shall be determined on the basis of the administrative record, as a whole, which is made in the adversary adjudication for which fees and other expenses are sought." 5 U.S.C. § 504(a)(1). The government bears the burden to show that its position was substantially justified. *See WECC, Inc.*, ASBCA No. 60949-EAJA, 22-1 BCA ¶ 38,115 at 185,140.

The government first contends its position in this appeal was substantially justified since a reasonable person could conclude Tsontos Greece and Tstontos Romania were the same entity that performed the contract for the purpose of issuing the CPARs evaluations (gov't opp'n at 4). The government notes (1) it awarded the contract and task orders to Tsontos Greece, (2) the date Tsontos Romania began performing the task orders as a separate branch is ambiguous, and (3) the modification changing the name on the contract to Tsontos Romania was only necessitated by the Romanian taxation laws (*id*. at 4-5).

The record contains evidence providing a substantial basis for the government's position. The government awarded the contract and task orders to Tsontos Greece. *Tsontos*, 24-1 BCA ¶ 38,694 at 188,117. To qualify for the value added tax exemption, Tsontos Greece established a branch in Romania. *Id.* The Tsontos Greece Board of Directors appointed Mr. Michael M. Tsontos, the Tsontos Greece chairman, as the branch administrator. *Id.* Mr. Tsontos requested the government change the name on the contract from "Michael M. Tsontos S.A" to "Michael M. Tsontos SA Chania Sucursala Bucuresti" to allow the Romanian branch company to be exempt from Romanian taxes. *Id.* at 188,118. Mr. Tsontos also told the government that "[t]he 'Branch' is equal in resources and procedures, has full signature authority for

4

MICHAEL M. TSONTOS S.A. and speaks as/for the Chairman, Mr. Michael Tsontos, himself." *Id.*

The government and Tsontos Greece subsequently entered into a modification changing the name on the contract but not the CAGE code. *Id.* Tsontos Romania later registered in the SAM database and received its own CAGE code. *Id.* The government then issued modifications changing the name on the task orders and the CAGE code on the contract. *Id.* The government, however, never updated the Contract Action Report (CAR) with Tsontos Romania's new CAGE code. *Id.* at 188,119-20. The government relied upon the CAR data in issuing the CPARs to Tsontos Greece. *Id.* at 188,119-20. The government also indicated it believed it could use the information from a branch company to evaluate the performance of the parent, so it was not necessary to change the CPARs. *Id.* at 188,120.

Even though Tsontos Romania employees performed most of the work on the task orders while deployed almost exclusively in Romania, Mr. Tsontos retained ultimate control over Tsontos Romania from Greece. *Id.* at 188,118. Moreover, the Tsontos Romanian program and project managers all reported to Mr. Tsontos. *Id.* Based upon these facts, we agree with the government that a reasonable person could conclude that Tsontos Greece, the parent company, and not Tsontos Romania, the branch company, was the entity directing contract and task order performance.

The government also contends its position was substantially justified because the issue of whether FAR 42.1502 required the government to issue the CPARs evaluation to the parent or branch was a matter of first impression (gov't opp'n at 8-9). "There is adequate support in decisional law for the proposition that the Government's position may be substantially justified when there is a novel issue, there is no clear contrary precedent on point, or an issue of first impression was presented to the tribunal." *Rex Sys., Inc.*, ASBCA No. 52247, 02-1 BCA ¶ 31,760 at 156,854 (quoting *Sun Eagle Corp.*, ASBCA Nos. 45985, 45986, 94-2 BCA ¶ 26,870 at 133,698). Appellant responds that this is not a case of first impression interpreting FAR 42.1502(a) since the text of that provision is clear and interpretations of language contrary to its plain meaning is not a substantially justified position (app. resp. at 5-6 (citing *SST (Supply & Serv. Team) GmbH*, ASBCA No. 59630, 18-1 BCA ¶ 36,932 at 179,932-33)).

FAR 42.1502(a) indicates the government should generally issue CPARs to "the entity, division, or unit that performed the contract or order." The issue before us does not involve an interpretation of the FAR 42.1502(a) language but rather the application of that language to these unique facts. The government is correct that there does not appear to be any prior Board decisions or case law applying this FAR provision. In that sense, the proper application of FAR 42.1502(a) to a situation involving a parent and branch company was an issue of first impression. As we previously discussed, it was

5

reasonable for the government, under these unique facts, to conclude Tsontos Greece was the real entity performing the contract.

While our previous decision disagreed with the government's conclusions, USACE submitted evidence from which a reasonable person could conclude Tsontos Greece was the entity performing the contract, and therefore, the government's position had a reasonable basis in law and fact. *See Conquistador Dorado Joint Venture*, ASBCA Nos. 60942-EAJA *et al.*, 24-1 BCA ¶ 38,620 at 187,733; *Buck Town Contractors & Co.*, ASBCA No. 60939-EAJA, 20-1 BCA ¶ 37,705 at 183,049.

<u>CONCLUSION</u>

We conclude for the purposes of EAJA that the government's position to issue the CPARs to Tsontos Greece rather than Tsontos Romania was substantially justified under 5 U.S.C. § 504(a)(1).[4]  The application is denied.

Dated:  July 11, 2025

ARTHUR M. TAYLOR
Administrative Judge
Armed Services Board
of Contract Appeals

I <u>concur</u>

OWEN C. WILSON
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

MICHAEL N. O'CONNELL
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

---

[4] In light of our conclusion that the government's position was substantially justified, we need not address any other issues and arguments raised by the parties.

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63595-EAJA, Appeal of Michael M. Tsontos, S.A., rendered in conformance with the Board's Charter.

Dated:

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals