# United States Court of Appeals for the Federal Circuit

---

**NEW YORK AND PRESBYTERIAN HOSPITAL,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2017-1180

---

Appeal from the United States Court of Federal Claims in No. 1:16-cv-00496-NBF, Senior Judge Nancy B. Firestone.

---

Decided: January 31, 2018

---

MAURA BARRY GRINALDS, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, argued for plaintiff-appellant. Also represented by JONATHAN LERNER; BERNARD JOHN WILLIAMS, JR., Washington, DC.

JACOB EARL CHRISTENSEN, Tax Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by TERESA E. MCLAUGHLIN, DAVID A. HUBBERT.

---

Before NEWMAN, O'MALLEY, and WALLACH, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* WALLACH.

Dissenting opinion filed by *Circuit Judge* O'MALLEY.

WALLACH, *Circuit Judge.*

Appellant New York and Presbyterian Hospital ("the Hospital")[1] sued Appellee the United States ("the Government") in the U.S. Court of Federal Claims, alleging that Internal Revenue Code § 3102(b) (2012) entitled the Hospital to recover money paid to its medical residents to settle related litigation in the U.S. District Court for the Southern District of New York ("the District Court"). The Government filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims. The Court of Federal Claims granted the Government's Motion to Dismiss, holding that § 3102(b) is not a money-mandating source of substantive law, as required for the Court of Federal Claims to have jurisdiction pursuant to 28 U.S.C. § 1491(a)(1) (2012) ("the Tucker Act"). *See N.Y. & Presbyterian Hosp. v. United States*, 128 Fed. Cl. 363, 364–65 (2016); *see also* J.A. 1 (Final Judgment).

The Hospital appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3). We reverse and remand.

---

[1]     The Hospital is the successor of two entities that merged in 1998: The Society of The New York Hospital and The Presbyterian Hospital. J.A. 30. For ease of reference, we refer to all three entities, individually and collectively, as the Hospital.

BACKGROUND[2]

## I. The Relevant Statutory and Regulatory Framework

Pursuant to the Federal Insurance Contributions Act ("FICA"), I.R.C. §§ 3101–3128, employees and employers each pay taxes based on wages paid to employees. *See id.* §§ 3101 (Tax on Employees), 3111 (Tax on Employers). Generally, the employee's FICA taxes are "collected by the employer of the taxpayer[] by deducting the amount of the tax from the wages as and when paid." *Id.* § 3102(a). The subsection at issue on appeal, § 3102(b), further provides that "[e]very employer required so to deduct the tax shall be liable for the payment of such tax, and shall be indemnified against the claims and demands of any person for the amount of any such payment made by such employer."

There are certain exceptions to the FICA tax. Relevant here, under the student exception, FICA taxes do not apply to wages for "service performed in the employ of . . . a school, college, or university . . . if such service is performed by a student who is enrolled and regularly attending classes at such school, college, or university." *Id.* § 3121(b)(10). Although the Internal Revenue Service ("IRS") determined that "medical residents were not eligible for the student exception and required hospitals employing medical residents to withhold the employee

---

[2] The parties do not contest the Court of Federal Claims' recitation of the relevant facts, *see* Appellant's Br. 3–17; Appellee's Br. 3–17, which it properly derived from the Hospital's complaint, *see N.Y. & Presbyterian Hosp.*, 128 Fed. Cl. at 365–67; *see also Hymas v. United States*, 810 F.3d 1312, 1317 (Fed. Cir. 2016) (explaining that the court accepts as true uncontroverted factual allegations in a complaint when the parties dispute jurisdiction). Accordingly, we cite to the Court of Federal Claims' recitation of the facts.

share of FICA taxes from residents' paychecks and pay the withheld amounts and the employer share to the [G]overnment," the scope of the student exception became subject to litigation. *N.Y. & Presbyterian Hosp.*, 128 Fed. Cl. at 365 (citations omitted). During the pendency of that litigation, the IRS allowed either employers or medical residents to file protective refund claims to preserve their claims for refunds of the FICA taxes. *Id.*; *see* Treas. Reg. § 31.6402(a)-2(a), (b) (1960).

In 2004, the IRS implemented a regulation excluding medical residents from the student exception for services provided after April 1, 2005. *N.Y. & Presbyterian Hosp.*, 128 Fed. Cl. at 365; *see* Student FICA Exception, 69 Fed. Reg. 76,404, 76,408–10 (Dec. 21, 2004); *see also Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 60 (2011) (holding that the "rule is a reasonable construction of what Congress has said"). However, in 2010, "the IRS decided that . . . medical residents could qualify for the student exception for tax periods ending before April 1, 2005," such that "hospitals and [medical] residents who had filed protective refund claims for tax periods before April 1, 2005[,] would be able to obtain refunds of the FICA taxes withheld from residents' wages." *N.Y. & Presbyterian Hosp.*, 128 Fed. Cl. at 365 (citations omitted); *see* J.A. 37 (IRS News Release).

## II. The District Court Litigation

In August 2013, former medical residents ("the District Court Plaintiffs") sued the Hospital in the District Court, alleging that the Hospital had not filed protective refund claims between January 1995 and June 2001, and asserting claims of fraud, constructive fraud, breach of fiduciary duty, negligent misrepresentation, negligence, breach of contract, and unjust enrichment. *See Childers v. N.Y. & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 298, 300 (S.D.N.Y. 2014); *see* J.A. 38–74. The Hospital filed a motion to dismiss, *see* J.A. 75–102, arguing that, inter

alia, the District Court Plaintiffs' claims were "disguised tax refund suits," *Childers*, 36 F. Supp. 3d at 303, and Internal Revenue Code § 7422 "bars any suit to recover a tax unless a timely refund claim has been made," *id.* at 302; *see* I.R.C. § 7422(a) (providing, in relevant part, that "[n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . until a claim for refund or credit has been duly filed" with the IRS). The District Court denied the Hospital's Motion to Dismiss, holding that the District Court Plaintiffs' claims "do not arise out of the Hospital's collection of taxes[] and therefore do not implicate the rationale for excusing the employer as tax collector from liability for tax refunds" but rather out of "independent actions and omissions" like failing "to file protective refund claims." *Childers*, 36 F. Supp. 3d at 303.

After the District Court declined the Hospital's request to certify its denial of the Hospital's Motion to Dismiss for immediate appeal, *see id.* at 315, the Hospital petitioned for writs of mandamus, *e.g.*, J.A. 117, each of which the U.S. Court of Appeals for the Second Circuit denied, J.A. 157. The Hospital decided to pursue settlement and, in November 2015, the Hospital and the District Court Plaintiffs entered into a settlement agreement, whereby the Hospital agreed to pay the District Court Plaintiffs $6,632,000. *See* J.A. 346, 348; *see also* J.A. 261. Relevant here, the Settlement Agreement provides that the settlement award "can be appropriately characterized as a refund for the amount of FICA taxes previously withheld by the Hospital." J.A. 275. Upon approving the the Settlement Agreement, the District Court dismissed the District Court Plaintiffs' claims. *See* J.A. 358.

III. The Court of Federal Claims Litigation

In April 2016, the Hospital filed its Complaint in the Court of Federal Claims,[3] arguing that § 3102(b) indemnified the Hospital from the District Court Plaintiffs' claims and seeking, inter alia, reimbursement of the $6,632,000 paid to the District Court Plaintiffs under the Settlement Agreement. J.A. 34–35. The Government filed its Motion to Dismiss, arguing that "the phrase 'shall be indemnified' in [§] 3102(b) is not properly read to require the [G]overment to reimburse an employer that is sued in connection with the collection of FICA taxes." *N.Y. & Presbyterian Hosp.*, 128 Fed. Cl. at 369. The Court of Federal Claims analyzed FICA's statutory framework and agreed with the Government, holding that "[§] 3102(b) is . . . an immunity provision and that a contrary reading would undermine the statutory refund scheme contrary to Congress' intent." *Id.* at 373.

---

[3] Following the denial of certification for immediate appeal, the Hospital filed a third-party complaint in the District Court that listed the Government as a third-party defendant, J.A. 158–67; however, the District Court later dismissed the Third-Party Complaint without prejudice at the Hospital's request, *N.Y. & Presbyterian Hosp.*, 128 Fed. Cl. at 366. When the Hospital originally sued in the Court of Federal Claims in June 2015, the Court of Federal Claims dismissed that case without prejudice because it was filed while the Hospital's Third-Party Complaint was pending in the District Court, such that the Court of Federal Claims did not have jurisdiction over the case pursuant to 28 U.S.C. § 1500. *Id.* at 367; *see* 28 U.S.C. § 1500 ("The . . . Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff . . . has pending in any other court any suit or process against the United States . . . .").

DISCUSSION

I. Standard of Review and Legal Standard

We review the Court of Federal Claims' dismissal of an action for lack of subject matter jurisdiction de novo, *Coast Prof'l, Inc. v. United States*, 828 F.3d 1349, 1354 (Fed. Cir. 2016), and its attendant factual findings for clear error, *see Hymas*, 810 F.3d at 1317.

Pursuant to the Tucker Act, the Court of Federal Claims has jurisdiction

> to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The Tucker Act is "only a jurisdictional statute; it does not create *any* substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon [the Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976) (emphasis added) (citation omitted). Therefore, "a plaintiff must identify a separate source of substantive law that creates the right to money damages. . . . [T]hat source must be 'money-mandating.'" *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part) (citations omitted).

Although the waiver of sovereign immunity must be unequivocal, *see United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003), the money-mandating source of substantive law may be express or implied, *see United States v. Mitchell*, 463 U.S. 206, 217 n.16 (1983). In *Mitchell*, the Supreme Court reaffirmed that a plaintiff "must demonstrate that the source of substantive

law . . . relie[d] upon can *fairly be interpreted* as mandating compensation by the Federal Government for the damages sustained." *Id.* at 216–17 (emphasis added) (internal quotation marks, citation, and footnote omitted). Subsequently, the Supreme Court clarified the "fairly be interpreted" standard:

> This fair interpretation rule demands a showing *demonstrably lower* than the standard for the initial waiver of sovereign immunity. . . . It is enough, then, that a statute creating a Tucker Act right *be reasonably amenable to the reading* that it mandates a right of recovery in damages. While the premise to a Tucker Act claim will not be lightly inferred, a fair inference will do.

*White Mountain*, 537 U.S. at 472–73 (emphases added) (internal quotation marks and citations omitted). The Supreme Court also explained that "explicit authorization of a damages remedy" may be required when there are "strong indications that Congress did not intend to mandate money damages," such that "a fair inference will require an express provision[] when the legal current is otherwise against the existence of a cognizable claim." *Id.* at 478.[4]

---

[4]    While the Court of Federal Claims articulated the fair interpretation standard, *N.Y. & Presbyterian Hosp.*, 128 Fed. Cl. at 367, it may have applied a more demanding standard, *see id.* at 370 (stating that "'indemnified' does not *necessarily* mean a right to 'reimbursement'" and that "*the better reading* of the word comes from the *primary* definitions" (emphases added)); *see also Int'l Custom Prods., Inc. v. United States*, 843 F.3d 1355, 1359–60 (Fed. Cir. 2016) (assessing for error based on the lower court's application of the law rather than the recited standard). Noting that the Supreme Court rejected a

## II. The Court of Federal Claims Erred in Concluding that It Lacked Subject Matter Jurisdiction over the Hospital's Complaint

The sole issue on appeal is whether § 3102(b)'s "shall be indemnified" language is a money-mandating source of substantive law.[5] *See* Appellant's Br. 2; Appellee's Br. 3. The Hospital argues that § 3102(b) is money-mandating because "the words 'shall be indemnified' can be fairly interpreted to require the Government to pay monetary compensation," Appellant's Br. 27 (capitalization modified), whereas the Government argues "§ 3102(b) cannot 'fairly be interpreted' to mandate compensation by the [F]ederal [G]overnment for damages sustained" because "§ 3102(b) is an immunity provision, not a reimbursement provision," Appellee's Br. 24. Because § 3102(b) is reasonably amenable to an interpretation that it mandates the Government to reimburse FICA taxes paid by an employer, we hold that § 3102(b) is money-mandating and that the Court of Federal Claims erred in concluding that

---

heightened standard in *White Mountain*, we reiterate that there is no requirement of a "plain and explicit statement" that money damages are due. 537 U.S. at 477. To the extent the Court of Federal Claims believes there are "strong indications that Congress did not intend to mandate money damages," such that an "express provision" is necessary, *id.* at 478, it should have articulated such a conclusion rather than expected this court to divine its rationale.

[5]    Section 3102(b) provides, in its entirety, that "[e]very employer required so to deduct the tax shall be liable for the payment of such tax, and shall be indemnified against the claims and demands of any person for the amount of any such payment made by such employer."

it lacked subject matter jurisdiction over the Hospital's Complaint.[6]

### A. The Plain Language of § 3102(b)

We begin with the plain language of § 3102(b). *See BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004) ("[O]ur inquiry begins with the statutory text[] and ends there as well if the text is unambiguous." (citations omitted)). "It is a fundamental canon of statutory construction that . . . words will be interpreted as taking their ordinary, contemporary, common meaning," which may be derived from "[d]ictionaries from the era of [the statutory provision]'s enactment." *Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 876 (2014) (internal quotation marks and citation omitted). Because the common meaning of "indemnified"[7] at the time of § 3102(b)'s enactment contem-

---

[6]    Although we hold that § 3102(b) is "reasonably amenable" to this interpretation in accordance with the Supreme Court's standard, *White Mountain*, 537 U.S. at 472–73, we believe the only reasonable interpretation of § 3102(b) is that it mandates the Government to reimburse FICA taxes paid to an employer.

[7]    Of the phrase "shall be indemnified," only the term "indemnified" requires interpretation. It is undisputed that § 3102(b)'s use of "shall" mandates indemnifiction. *See* Appellant's Br. 27–40; Appellee's Br. 24–44; *see also Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1977 (2016) ("[T]he word 'shall' usually connotes a requirement."); *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (explaining that the use of "the mandatory 'shall,' . . . normally creates an obligation impervious to judicial discretion" (citation omitted)). There is no meaningful dispute that, if § 3102(b) mandates monetary compensation, then the Government is the indemnitor under the statute. *See N.Y. & Presbyterian Hosp.*, 128 Fed. Cl. at 373 n.10

plated reimbursement, § 3102(b) is "reasonably amenable to the reading that it mandates a right of recovery in damages." *White Mountain*, 537 U.S. at 473.

Three contemporaneous dictionaries support the conclusion that the plain meaning of "indemnified" includes monetary compensation.[8] First, the 1933 Oxford English Dictionary defined "indemnify" to mean, inter alia: "1. . . . To preserve, protect, or keep free from, secure against (any hurt, harm, or loss); to secure against legal

---

(stating that, although the Government argued that § 3102(b) is not money-mandating because it does not "identify the [G]overnment as the liable entity," the Court of Federal Claims' "reasoning rest[ed] on its construction of the word 'indemnified'"); *see also* Oral Arg. 16:43–18:14, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20 17-1180.mp3 (arguing, by the Government, that no indemnitor exists under the Government's interpretation but failing to identify another possible indemnitor under the Hospital's interpretation); Appellant's Br. 47–48 (arguing that the Government is the only possible indemnitor). *See generally* Appellee's Br. (failing to argue that the Government would not be the indemnitor under the Hospital's interpretation). Therefore, the dispute turns on the meaning of "indemnified."

[8] Section 3102(b) originally was enacted in 1935 as § 802(a) of the Social Security Act. *See* Social Security Act, ch. 531, tit. VIII, § 802(a), 49 Stat. 620, 636 (1935) (stating, in relevant part, that "[e]very employer . . . is hereby indemnified"); *see also* Internal Revenue Code, ch. 9A, § 1401(b), 53 Stat. 1, 175 (1939) (codifying the current "shall be indemnified" language). We focus our analysis on the dictionaries contemporaneous to § 3102(b)'s enactment in 1935, *see Sandifer*, 134 S. Ct. at 876, and note that neither party contends that the amendments to the language affect our analysis.

responsibility for past or future actions or events; to give an indemnity to. . . . 2. To compensate (a person, etc.) for loss suffered, expenses incurred, etc." *Indemnify*, The Oxford English Dictionary (1st ed. 1933) (italics omitted); *see Indemnification*, The Oxford English Dictionary (1st ed. 1933) (defining "indemnification" to mean, inter alia, "[t]he action of compensating for actual loss or damage sustained; also the fact of being compensated"); *Indemnity*, The Oxford English Dictionary (1st ed. 1933) (defining "indemnity" to mean, inter alia, "[a] legal exemption from the penalties or liabilities incurred by any course of action" and "[c]ompensation for loss or damage incurred," i.e., "[a] sum paid by way of compensation").

Second, both the 1917 and 1942 editions of Webster's New International Dictionary of the English Language defined "indemnify" similarly, with the 1917 version defining the term to mean: "1. To save harmless; to secure against loss or damage. . . . 2. To make restitution or compensation to, as for a loss, damage, etc.; to make whole; to reimburse; to compensate; also, to make good (a loss)." *Indemnify*, Webster's New Int'l Dictionary of the English Language (1st ed. 1917); *see Indemnify*, Webster's New Int'l Dictionary of the English Language (2d ed. 1942) (similar); *see also Indemnification*, Webster's New Int'l Dictionary of the English Language (1st ed. 1917) (defining "indemnification" to mean, inter alia, a "process of indemnifying, preserving, or securing against loss, damage, or penalty; reimbursement of loss, damage, or penalty; the state of being indemnified" and defining "indemnity" to mean, inter alia, "[i]ndemnification, compensation, or remuneration for loss, damage, or injury sustained"); *Indemnification*, Webster's New Int'l Dictionary of the English Language (2d ed. 1942) (similar).

Third, and finally, the 1933 version of Black's Law Dictionary defined "indemnify" to mean: "To save harmless; to secure against loss or damage; to give security for the reimbursement of a person in case of an anticipated

loss falling upon him. . . . Also to make good; to compensate; to make reimbursement to one of a loss already incurred by him." *Indemnify*, Black's Law Dictionary (3d ed. 1933); *see Indemnity*, Black's Law Dictionary (3d ed. 1933) (stating that "indemnity" "is also used to denote a compensation given to make the person whole from a loss already sustained").

Based on a review of these three contemporaneous dictionaries, the plain meaning of "indemnify" included monetary compensation at the time of § 3102(b)'s enactment. Not only do all three dictionaries include "to compensate" in their definitions, *Indemnify*, Webster's New Int'l Dictionary of the English Language (1st ed. 1917); *see also Indemnify*, Webster's New Int'l Dictionary of the English Language (2d ed. 1942); *Indemnify*, The Oxford English Dictionary (1st ed. 1933); *Indemnify*, Black's Law Dictionary (3d ed. 1933), two discuss reimbursement, *Indemnify*, Webster's New Int'l Dictionary of the English Language (1st ed. 1917); *see also Indemnify*, Webster's New Int'l Dictionary of the English Language (2d ed. 1942); *Indemnify*, Black's Law Dictionary (3d ed. 1933), the very relief that the Hospital seeks here.[9] Section 3102(b) thus is "reasonably amenable to the reading that it mandates a right of recovery in damages." *White Mountain*, 537 U.S. at 473.[10]

---

[9]  This definition also comports with the common law definition of "indemnify" contemporaneous with § 3102(b)'s enactment. *See* Restatement (First) of Restitution § 80 (Am. Law Inst. 1937) ("A person who . . . is entitled to indemnity . . . is entitled to reimbursement . . . .").

[10]  Indeed, in an opinion issued by the Department of Justice's Office of Legal Counsel, the Government has acknowledged that "§ 3102(b) might be read as a promise to compensate employers for their liability arising out of

The Government's counterarguments are unpersuasive. Echoing the Court of Federal Claims' erroneous reasoning, the Government argues that "dictionaries during the time of enactment of . . . § 3102(b) consistently defined the terms 'indemnify' and 'indemnity,' *in the first definition or sense of the word*, to mean immunity from liability." Appellee's Br. 30 (emphasis added); *see N.Y. & Presbyterian Hosp.*, 128 Fed. Cl. at 370 ("[T]he court finds that the better reading of the word comes from the primary definitions in the above-cited dictionaries, which nearly consistently defined 'indemnify' first to mean an exemption from liability."). This argument fails for at least three reasons. First, the fair interpretation standard used to determine whether a statute is money-mandating does not require courts to evaluate whether the "first" or "primary" meaning of the statute mandates compensa-

---

the FICA tax collection process rather than as a legal exemption from liability in the first instance." Prejudgment Interest Under the Back Pay Act for Refunds of Fed. Ins. Contributions Act Overpayments, 18 Op. O.L.C. 127, 134 n.7 (1994) ("FICA Mem."). The Government then stated that, "if two readings are plausible, the one that does not waive sovereign immunity must be adopted" and, thus, it "read § 3102(b) as conferring a legal exemption." *Id.* The Government erred in its offhand dismissal of this reading on sovereign immunity grounds. *See White Mountain*, 537 U.S. at 472 ("This fair interpretation rule demands a showing *demonstrably lower* than the standard for the initial waiver of sovereign immunity." (emphasis added) (internal quotation marks omitted)). Therefore, the Government's acknowledgement that reading § 3102(b) "as a promise to compensate employers" is "plausible," FICA Mem. 18 Op. O.L.C. at 134 n.7, strongly supports the conclusion that the statute is reasonably amenable to an interpretation that it mandates monetary compensation.

tion.[11]  Instead, it requires courts to evaluate whether the statute is "*reasonably* amenable to the reading that it mandates a right of recovery in damages." *White Mountain*, 537 U.S. at 473 (emphasis added).  Second, the first definition in each of the three dictionaries uses terms like "protect," "save harmless," and "secure against," but the dictionaries themselves indicate that the order of the definitions does not reflect the plain or most widely accepted meaning of the terms as understood at the time.  For instance, the 1933 version of the Oxford English Dictionary states "that sense is placed first which was actually the earliest in the language:  the others follow in the order in which they appear to have arisen." *Preface* to Oxford English Dictionary, at xxxi (1st ed. 1933) (reprinted in 1961); *cf. Explanatory Notes* to Webster's Third New Int'l Dictionary, at 17a (1986) (stating that the ordering of senses "does not evaluate senses or establish an enduring hierarchy of importance among them").  Third, even if the meaning of indemnify were limited to the first definitions, those definitions still contemplate monetary compensation.  *See, e.g.*, *Secure*, Webster's New Int'l Dictionary (2d ed. 1942) (defining "secure" to mean "[t]o give adequate pledge of payment"); *Secure*, Black's Law Dictionary (3d ed. 1933) (defining "secure" to mean, inter alia, "to assure of payment" and "make certain the payment of a debt or discharge of an obligation").  The order of the definitions neither matters under the relevant legal standard nor

---

[11]  To support this erroneous analysis, the Government cites *Muscarello v. United States*, 524 U.S. 125, 128 (1998), *see* Appellee's Br. 30, and the Court of Federal Claims cited *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 410 (2011), *see N.Y. & Presbyterian Hosp.*, 128 Fed. Cl. at 370.  However, neither case applies the fair interpretation standard to determine whether a statute is money-mandating and, thus, both cases are inapposite.

indicates whether the common understanding of "indemnify" included monetary compensation at the time § 3102(b) was enacted.

The Government also avers that "the Hospital's reading of § 3102(b) as a reimbursement provision cannot be squared with the first clause of the statute" because

> it would make little sense to read the very next clause of the statute as authorizing employers who have so collected and paid FICA taxes to the IRS to turn around and, at their own whim, pay the "claims" and "demands" of their employees . . . , and then be entitled to full reimbursement from the United States for doing so.

Appellee's Br. 32–33. Although it is true that "[s]tatutes should be interpreted to avoid . . . unreasonable results whenever possible," *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 71 (1982), it also is true that "[t]he preeminent canon of statutory construction requires us to presume that the legislature says in a statute what it means and means in a statute what it says there," *BedRoc*, 541 U.S. at 183 (internal quotation marks, brackets, and citation omitted). As we explained above, the plain language of § 3102(b) is reasonably amenable to an interpretation that it mandates reimbursement. Therefore, even if we were to agree that the Hospital's interpretation leads to unreasonable results, "it is for Congress, not this [c]ourt, to rewrite the statute." *Blount v. Rizzi*, 400 U.S. 410, 419 (1971).[12]

---

[12]   The Government further contends that "[t]he Hospital's position that § 3102(b) provides for reimbursement also cannot be reconciled with the numerous cases holding that FICA does not create a private cause of action for employees to sue their employers over the withholding and payment of FICA taxes." Appellee's Br.

In sum, we conclude that, at the time of § 3102(b)'s enactment, "indemnify" was commonly understood to mean "to compensate" and "to reimburse," thereby supporting the conclusion that § 3102(b) is reasonably amenable to an interpretation that it is money-mandating.

## B. Section 3102(b)'s Relationship to Other Provisions of the Internal Revenue Code

Other provisions of the Internal Revenue Code also may inform our interpretation of § 3102(b). *See Davis v. Mich. Dep't of the Treasury*, 489 U.S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."). Three sections of the Internal Revenue Code, specifically §§ 3202(b), 3403, and 7422, further support our conclusion that § 3102(b) is reasonably amenable to an interpretation that it is money-mandating.

First, both § 3202(b), which is the counterpart to § 3102 for railroad employers and employees,[13] and

---

41; *see id.* at 41–44 (discussing, inter alia, *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 67–68 (3d Cir. 2008) and *McDonald v. S. Farm Bureau Life Ins. Co.*, 291 F.3d 718, 724–25 (11th Cir. 2002)). However, these cases neither are binding precedent, *see Int'l Custom Prods.*, 843 F.3d at 1360 ("[D]ecisions from other circuits are not binding on this court." (internal quotation marks and citation omitted)), nor decide whether § 3102(b) is money-mandating. Therefore, we ground our analysis in the text of § 3102(b), as we must.

[13] Section 3202(b) is entitled "Indemnification of employer," and the Court of Federal Claims held that "[§] 3202(b) uses both 'indemnified' and 'not . . . liable' in the same provision to mean the same thing." *N.Y. & Presbyterian Hosp.*, 128 Fed. Cl. at 372. For the reasons

§ 3403, which concerns the withholding of taxes by an employer, provide that the "employer . . . *shall not be liable* to any person for the amount of any such payment" for taxes deducted, I.R.C. §§ 3202(b), 3403 (emphasis added),[14] such that employers are immunized from em-

---

outlined herein, we hold that the Court of Federal Claims erroneously equated "indemnified" and "not . . . liable." Moreover, as the Government concedes, *see* Appellee's Br. 49, the Internal Revenue Code explicitly provides that its titles have no legal effect, *see* I.R.C. § 7806(b) ("No inference, implication, or presumption of legislative construction shall be drawn or made by reason of the location or grouping of any particular section or provision or portion of this title . . . ."); *see also United States v. Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. 213, 222–24 (1996) (accepting the Government's disavowal of reliance upon a title pursuant to § 7806(b)). The Court of Federal Claims thus erred by relying on the use of "indemnification" in § 3202(b)'s title.

[14] When originally enacted, both §§ 3202(b) and 3403 provided that the employer is "hereby indemnified," Carriers and Employees Tax Act of 1935, Pub. L. No. 74-400, ch. 813, § 3(a), 49 Stat. 974, 975 (predecessor to § 3202(b)); Revenue Act of 1916, ch. 463, § 9(b), 39 Stat. 756, 764 (predecessor to § 3403), but Congress later replaced that language with the current "shall not be liable" language, Revenue Act of 1942, ch. 619, § 467(b), 56 Stat. 798, 891 (predecessor to § 3403); Internal Revenue Code of 1939, ch. 9B, § 1501(b), 53 Stat. 1, 179 (predecessor to § 3202(b)). To the extent these subsequent amendments may inform Congressional intent, we find instructive Congress's decision not to amend § 802(a) of the Social Security Act, § 3102(b)'s predecessor, despite the statutes' similar wordings and purposes. *See Haig v. Agee*, 453 U.S. 280, 301 (1981) (referring to a subsequent Congress's amendments to a statute as "weighty evidence

ployee suits for reimbursement of taxes deducted by the employer. Because §§ 3202(b) and 3403 are structured similarly to § 3102(b) but provide that the employer "shall not be liable" rather than that the employer "shall be indemnified," we may presume that Congress intended these phrases to have different meanings. *See Sebelius v. Cloer*, 569 U.S. 369, 378 (2013) ("We have long held that where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotation marks, brackets, and citation omitted)).

Second, § 7422 provides that taxpayers "may bring '[n]o suit' in 'any court' to recover 'any internal revenue tax' or 'any sum' alleged to have been wrongfully collected 'in any manner,'" *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 7 (2008) (quoting I.R.C. § 7422(a)), and that "[a] suit or proceeding . . . may be maintained only against the United States," I.R.C. § 7422(f)(1). The Supreme Court explained that § 7422 "clearly state[s] that taxpayers seeking refunds of unlawfully assessed taxes must comply with the [Internal Revenue] Code's refund scheme before bringing suit." *Clintwood Elkhorn*, 553 U.S. at 8. As the Government conceded, *see* J.A. 399

---

of [C]ongressional approval" because, "though [Congress] once again enacted legislation relating to [the subject matter of the statute], [it] left completely untouched the broad rule-making authority granted in the earlier [a]ct" (internal quotation marks and citation omitted)). *But see Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 840 (1988) ("The views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." (internal quotation marks, brackets, and citation omitted)),

(Q: "In a real—in a perfect world, would this District Court have dismissed this case under [§] 7422?" A: "I think that's—I think that was the proper thing to do."), the District Court should have interpreted § 7422 so that the Hospital was immunized from the District Court Plaintiffs' Complaint and dismissed their claims, *see Clintwood Elkhorn*, 553 U.S. at 9 (stating that the nature of the claims "does not matter" because, "[i]f the [taxpayers]' claims are subject to the [Internal Revenue] Code provisions, those claims are barred whatever the source of the cause of action"). Because § 7422 plainly immunizes employers from claims by employees for the recovery of any internal revenue tax alleged to have been wrongfully collected, *see Clintwood Elkhorn*, 553 U.S. at 7–8, we conclude that § 7422 demonstrates that Congress knew how to craft an immunity provision when it so desired, *see Cloer*, 569 U.S. at 378.[15]

---

[15] The Government argues that, "if the Hospital's reading of § 3102(b) as a reimbursement provision were correct, then there would be no need for employees to file refund claims with the IRS, so long as their employers were willing to pay their claims and obtain reimbursement from the United States," Appellee's Br. 37, which would render § 7422 "virtually a dead letter," *id.* (internal quotation marks and citation omitted), and allow "employees and employers [to] easily circumvent" the Internal Revenue Code's refund scheme, *id.* at 38; *see id.* at 35–41. We need not decide whether § 3102(b) is inconsistent with § 7422's refund scheme because "[t]he role of this [c]ourt is to apply the statute as it is written—even if we think some other approach might accord with good policy." *Sandifer*, 134 S. Ct. at 878 (internal quotation marks and citation omitted).

### C. Legislative History

Courts also may rely on legislative history to inform their interpretation of statutes. *See Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994). The legislative history of § 3102(b) further supports our conclusion that § 3102(b) is reasonably amenable to an interpretation that it is money-mandating.

The only relevant legislative history identified by either the parties or this court is the House Report on § 802(a) of the Social Security Act, § 3102(b)'s predecessor. *See* Appellant's Br. 29–30; Appellee's Br. 33–34. The House Report states that, "[t]o protect the employer, he is indemnified against any claims and demands with respect to that part of the wages of the employee which he withheld, up to the correct amount withheld and paid to the United States." H.R. Rep. No. 74-615, at 30 (1935). By providing for indemnification up to the "correct amount," the House Report indicates that Congress understood "indemnification" to contemplate the payment of money. If read otherwise, it would allow an employer to sue for more than the correct amount. Thus, we hold that § 3102(b) is a money-mandating provision, in light of the statute's text, structure, and legislative history.

### CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. Accordingly, the Final Judgment of the Court of Federal Claims is

### **REVERSED AND REMANDED**

### COSTS

Costs to the Hospital.

# United States Court of Appeals
# for the Federal Circuit

---

**NEW YORK AND PRESBYTERIAN HOSPITAL,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2017-1180

---

Appeal from the United States Court of Federal Claims in No. 1:16-cv-00496-NBF, Senior Judge Nancy B. Firestone.

---

Decided:

---

O'MALLEY, *Circuit Judge*, dissenting.

I agree with the majority that a statute is money-mandating for the purposes of Tucker Act jurisdiction if it "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) (quoting *United States v. Mitchell*, 463 U.S. 206, 216–17 (1983)). I disagree, however, with the majority's application of this standard. I believe that the *en banc* portion of our decision in *Fisher v. United States*, 402 F.3d 1167, 1171–73 (Fed. Cir. 2005) (en banc in

relevant part), compels a more searching analysis than the majority conducts. Under the correct analytical approach, I would find that 26 U.S.C. § 3102(b) must be interpreted as an immunity provision, not a reimbursement provision, and that § 3102(b) is not money-mandating. I therefore respectfully dissent from today's judgment.

I.

The threshold question in this case is how we are to determine whether a statute is money-mandating. The governing test originates in *United States v. Testan*, 424 U.S. 392 (1976). The Supreme Court held in *Testan* that a federal statute is money-mandating only if it "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Id.* at 400 (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1009 (Ct. Cl. 1967)). The Court repeated the "fairly be interpreted" language in *United States v. Mitchell*, 463 U.S. at 216–17 (quoting *Testan*, 424 U.S. at 400). The Court explained that "the substantive source of law may grant the claimant a right to recover damages either 'expressly or by implication.'" *Id.* at 217 n.16 (quoting *Eastport*, 372 F.2d at 1009).

The Court returned to this question in *White Mountain*. In a 5–4 decision, the Court held *again* that "a statute creates a right capable of grounding a claim within the waiver of sovereign immunity if, but only if, it 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" 537 U.S. at 472 (quoting *Mitchell*, 463 U.S. at 217). The Court elaborated on that holding, however, stating that "[i]t is enough . . . that a statute creating a Tucker Act right be reasonably amenable to the reading that it mandates a right of recovery in damages." *Id.* at 473. "While the premise to a Tucker Act claim will not be 'lightly inferred,'

a fair inference will do." *Id.* (quoting *Mitchell*, 463 U.S. at 218).

Four justices dissented, suggesting that the Court had loosened the relevant test and "engage[d] in a new inquiry, asking whether common-law trust principles permit a 'fair inference' that money damages are available, that finds no support in existing law." *Id.* at 482 (Thomas, J., dissenting). They believed that the Court had "fashion[ed] a new test to determine whether Congress has conferred a substantive right enforceable against the United States in a suit for money damages." *Id.* at 487. Two justices who joined the *White Mountain* majority—and whose votes were necessary to form that majority—issued a separate concurrence, however. The concurrence emphasized that they believed that the majority opinion was "guided by" *Mitchell*, and did not change the law, despite the language employed. *Id.* at 479–80 (Ginsburg, J., concurring).

Before *White Mountain*, our precedent suggested a two-step inquiry where, "for purposes of satisfying the jurisdictional requirement that a money-mandating statute or regulation is before the court, the plaintiff need only make a non-frivolous allegation that the statute or regulation may be interpreted as money-mandating." *Fisher*, 402 F.3d at 1172 (citing *Gollehon Farming v. United States*, 1373, 1378–80 (Fed. Cir. 2000)). "If, as a second step, the issue of jurisdiction is later pressed and it is subsequently decided that the statute or regulation is not money-mandating, then the case is dismissed for failure to state a claim upon which relief can be granted." *Id.* (citing *Gollehon*, 207 F.3d at 1379).

In *Fisher*, we overruled this line of cases. *Id.* at 1172–73. We held instead that:

When a complaint is filed alleging a Tucker Act claim based on a Constitutional provision, statute, or regulation, the trial court at the outset shall

> determine, either in response to a motion by the
> Government or *sua sponte* (the court is always re-
> sponsible for its own jurisdiction), whether the
> Constitutional provision, statute, or regulation is
> one that is money-mandating.  . . .  For purposes
> of the case before the trial court, the determina-
> tion that the source is money-mandating shall be
> determinative both as to the question of the
> court's jurisdiction and thereafter as to the ques-
> tion of whether, on the merits, plaintiff has a
> money-mandating source on which to base his
> cause of action.

*Id.* at 1173.

It is not readily apparent how we are to reconcile the
"reasonably amenable" language in *White Mountain* with
our discussion in *Fisher*, which postdated *White Moun-
tain*.  The majority concludes that *White Mountain* set
forth an apparently permissive test, where, if a statute is
"reasonably amenable" to a money-mandating reading,
the jurisdictional requirement is satisfied, even if, upon
further inquiry, a thorough review of the statutory
scheme at issue would lead to a contrary conclusion.  537
U.S. at 473.  In *Fisher*, however, we held that the same
"single test" is the sole determinant of whether a statute
is money-mandating.  402 F.3d at 1173.  This creates a
conundrum.  There may be multiple reasonable ways to
read a statute, but whether a statute is money-mandating
is ultimately a yes-or-no question, presumably governed
by the *more reasonable* and fair reading of the statute.

Soon after we issued our opinion in *Fisher*, the Court
of Federal Claims grappled with this problem in *Contre-
ras v. United States*, 64 Fed. Cl. 583 (2005).  The plaintiffs
in *Contreras* argued that *White Mountain* "establish[ed] a
new test for determining whether a statute is money-
mandating" that "replaces a normal 'fairly interpreted'
test with a less-demanding test of 'reasonable amenabil-

ity' based on fair inferences." *Id.* at 588 (alteration in original). The court rejected this contention, finding instead "that the Supreme Court could not have intended to change the legal test for determining whether a statute is money-mandating." *Id.* at 590. Analyzing the language of *White Mountain* at length, the *Contreras* court ultimately concluded that "[t]he test for whether a statute is money-mandating has not changed—our Court must still determine whether the statute, correctly interpreted, would require a money damages remedy." *Id.* at 590–92. The *Contreras* court said:

> To read "fair inference" to mean anything less than the normal inference used in interpreting a statute . . . would make little sense, particularly in light of [*Fisher*'s] elimination of the "two-step process." The meaning of a statute when this Court determines if a case is within its jurisdiction is the same as its meaning when the Court determines the merits of the case. How could it be that a statute would require the government to pay money damages merely because it arguably can be read to require the government to pay money damages? To be close to something is not the same as being it. Surely, "good enough for government liability" is not the measure of our Court's jurisdiction.

*Id.* at 592 (citing *Fisher*, 402 F.3d at 1172–73).

In short, *Contreras* held—and the government argues here—that the test is not whether a money-mandating interpretation of a statute is *reasonable*, but whether it is *correct*. The government argues that a statute can only be "fairly interpreted" via application of all traditional principles of statutory interpretation, leading to the single, most correct, reading. That is, admittedly, a somewhat strained reading of the Supreme Court's phrasing in *White Mountain*; a statute may well be "amenable"

to multiple reasonable interpretations. *See White Mountain*, 537 U.S. at 473. As the majority does, that follow-on language in *White Mountain* could be read to require at this stage that we determine *only* whether the Hospital's money-mandating interpretation of the statute is "reasonabl[e]" or "fair[]," *id.* at 472–73, analogous to the familiar *Chevron* analysis of whether an agency's interpretation "is based on a permissible construction of the statute," *Chevron, U.S.A. Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 843 (1984).

But that approach is not compatible with *Fisher*. And I do not believe it is compelled by *White Mountain*. The majority's conclusion would mean that the Supreme Court *did* intend to change the law in *White Mountain*. But, if we are to determine in a single step and for all purposes whether a statute is money-mandating, we have no choice but to decide the most correct interpretation of the purportedly money-mandating statute in that one step—*i.e.*, the truly "fair" interpretation of it. It cannot be that a statute *mandates* that the government must pay monetary compensation on a set of claims merely if the statute *could* be read to permit it. At most, I read *Testan, Mitchell*, *White Mountain*, and *Fisher* to instruct courts to construe statutes liberally in determining whether they are money-mandating.[1] These cases do not stand for the proposition, however, that courts may avoid determining what the most reasonable interpretation of a statute is. We therefore must decide here not only whether a money-mandating interpretation of the statute is plausible, but

---

[1] It is unclear how the liberal construction mandate relating to remedial statutes applies in these circumstances. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 364–66 (2012) (discussing, and criticizing, the rule that remedial statutes should be liberally construed).

also the ultimate question of whether the statute is or is not money-mandating.

## II.

The majority holds repeatedly that "§ 3102(b) is reasonably amenable to an interpretation that it is money-mandating." Maj. Op. at 17, 21. It does not, however, engage with what the words "reasonably amenable" mean in light of *Fisher*. This oversight leads the majority to the wrong result.

## A.

The majority starts, as it must, with the plain language of § 3102(b). *Id.* at 10. In relevant part, § 3102(b) provides that every employer required to deduct FICA taxes "shall be liable for the payment of such tax, and shall be indemnified against the claims and demands of any person for the amount of any such payment made by such employer."

The majority finds, understandably, that the plain meaning of the word "indemnified" encompasses monetary compensation. Maj. Op. at 10–13. But the majority errs in its response to the government's argument that, at the time the statutory language was drafted, the word "indemnified" primarily referred to immunity from liability. The majority contends that "the fair interpretation standard used to determine whether a statute is money-mandating does not require courts to evaluate whether the 'first' or 'primary' meaning of the statute mandates compensation." *Id.* at 14–15. "Instead," the majority holds, the standard "requires courts to evaluate whether the statute is '*reasonably* amenable to the reading that it mandates a right of recovery in damages.'" *Id.* (alteration in original) (quoting *White Mountain*, 537 U.S. at 473). The majority then rejects the government's contention that this reading of the statute would have absurd results, finding it sufficient that "the plain language of

§ 3102(b) is reasonably amenable to an interpretation that it mandates reimbursement." *Id.* at 16.

The majority asks whether the word "indemnified" *can* mean a right to reimbursement. *White Mountain* and *Fisher*, however, require us to decide whether "indemnified" *does* confer a right to reimbursement, or at least can *fairly* be interpreted that way. In effect, the majority determines whether a money-mandating interpretation of § 3102(b) is permissible under *Chevron*, not whether it is fair under *White Mountain* and *Fisher*. In the context of the statutory scheme, I would find that it is not.[2]

When the similarly phrased predecessor to § 3102(b) was enacted,[3] dictionaries defined the terms "indemnify" and "indemnity" to mean immunity from liability. The 1933 edition of the Oxford English Dictionary defined "indemnify" as, among other things, "[t]o preserve, protect, or keep free from, secure against (any hurt, harm, or loss); to secure against legal responsibility for past or future actions or events." THE OXFORD ENGLISH DICTIONARY 194–95 (1933). The 1917 and 1942 editions of Webster's New International Dictionary similarly defined

---

[2] The majority indicates in a footnote that it also "believe[s]" that the money-mandating interpretation of § 3102(b) is "the only reasonable" one. Op. at 10 n.6. Obviously, I disagree with that proposition. I note, moreover, that the majority's analysis focuses solely on whether its interpretation is reasonable and not, as *Fisher* requires, on whether the money-mandating interpretation is better than the alternative.

[3] As the majority notes, § 3102(b) "originally was enacted in 1935 as § 802(a) of the Social Security Act," and "neither party contends that [any subsequent] amendments to the language affect our analysis." Maj. Op. at 11 n.8 (citing Social Security Act, ch. 531, tit. VIII, § 802(a), 49 Stat. 620, 636 (1935)).

"indemnify" to mean "[t]o save harmless; to secure against loss or damage," and they defined "indemnity" to include "immunity from penalty, or the punishment of past offenses." WEBSTER'S NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 1093 (W.T. Harris ed., 1917); WEBSTER'S NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 1262 (William Allan Neilson ed., 2d ed. 1942). And, in the 1933 edition of Black's Law Dictionary, one definition of "indemnity" was "[a] legislative act, assuring a general dispensation from punishment or exemption from prosecution." *Indemnity*, BLACK'S LAW DICTIONARY (3d ed. 1933).[4]

The majority is correct that the "plain meaning of 'indemnify' *included* monetary compensation." Maj. Op. at 12 (emphasis added). As the majority notes, several contemporaneous dictionaries also defined the word to refer to a right to reimbursement. *Id.* at 11–13. At the very least, however, the term is ambiguous. And, because we must determine whether the statute is money-mandating, we are obligated to resolve the ambiguity, even if, in doing so, we are to construe the statute liberally.

"[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989). The first clause of § 3102 requires employers to collect and pay FICA taxes to the IRS. Taxpayers who seek a credit or refund for any overpayment of FICA taxes must file a claim with the IRS within a specified time period. 26 U.S.C. § 6511. Section 7422(a) then precludes any court from considering an employee's claim for the recovery of any FICA taxes paid until the employee files a

---

[4] Like the majority, I do not find the ordering of the definitions in these dictionaries particularly significant.

claim with the IRS. Such a suit "may be maintained only against the United States." *Id.* § 7422(f)(1).

The "expansive reach" of § 7422 ensures "that taxpayers seeking refunds of unlawfully assessed taxes must comply with the Code's refund scheme before bringing suit, including the requirement to file a timely administrative claim." *United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 7–8 (2008). In sum, any taxpayer seeking a refund of taxes collected erroneously or unlawfully must comply first with the administrative claim process. *Id.* at 4. Only then may the taxpayer file suit against the government—and only the government—either in federal district court or in the Court of Federal Claims. *Id.*

Given this framework, it would make no sense for § 3102(b) to give the *employer* a right of reimbursement against "claims or demands . . . for the amount of" FICA taxes paid. The statutory scheme directs taxpayers' refund claims first towards the administrative process and then to suits against the government. No part of this process involves the employer. It is implausible that Congress created a reimbursement provision applicable solely to a procedural avenue that it explicitly precluded. And it hardly seems "fair" to interpret the statutory scheme as one which permits the employer, at its whim, to pay tax refunds to its own employees and then turn around and demand reimbursement from the government.[5]

---

[5] The majority appears to recognize that its interpretation of § 3102(b) would lead to unreasonable results, but it holds nevertheless that § 3102(b) is money-mandating because "the plain language of § 3102(b) is reasonably amenable to an interpretation that it mandates reimbursement." Maj. Op. at 16.

B.

The majority also points to other provisions of the tax code that eschew the "shall be indemnified" language of § 3102(b) in favor of the clearer statement that the "employer . . . shall not be liable" for the amount of taxes deducted.  26 U.S.C. §§ 3202(b), 3403.  The former should be interpreted differently from the latter, the majority posits, in light of the canon of construction that Congress intends different phrases in the same law to have different meanings.  Maj. Op. at 17–19 (citing *Sebelius v. Cloer*, 569 U.S. 369, 378 (2013)).

That principle applies with substantially less force to legislative activity like this, where the statutes in question were enacted piecemeal over the course of decades. Indeed, as the majority observes, the predecessor statutes to §§ 3202(b) and 3403 originally provided that the employer was "hereby indemnified" against demands for taxes paid.  Carriers and Employees Tax Act of 1935, Pub. L. No. 74-400, § 3(a), 49 Stat. 974, 975 (predecessor to § 3202(b)); Revenue Act of 1916, Pub. L. No. 64-271, § 9(b), 39 Stat. 756, 764 (predecessor to § 3403).  These statutes were later amended to say that the employer "shall not be liable" for such demands.  Internal Revenue Code of 1939, Pub. L. No. 76-1, § 1501(b), 53 Stat. 1, 179 (1939) (predecessor to § 3202(b)); Revenue Act of 1942, Pub. L. No. 77-753, § 467(b), 56 Stat. 798, 891 (predecessor to § 3403).[6]  Section 3102(b), on the other hand, retained the word "indemnified," and the majority finds this

---

[6]    In fact, when Congress amended the predecessor to § 3202(b) in 1939 to include the "shall not be liable" language, it also inserted the heading "[i]ndemnification of employer."  § 1501(b), 53 Stat. at 179.  Although the majority is correct that the heading itself has no legal effect, Maj. Op. at 17 n.13, it does shed light on how Congress may have understood the word "indemnify."

fact "instructive."  Maj. Op. at 18 n.14.  But the legislative history accompanying the amendments to §§ 3202(b) and 3403 did not give any reason for the change in language. Congress presumably would not transform a reimbursement provision into an immunity provision *sub silentio.* These statutes therefore do not require us to read § 3102(b) differently.  To the contrary, the legislative history suggests we should read all three statutes to mean the same thing—that is, as immunity provisions.

The majority also finds that "§ 7422 demonstrates that Congress knew how to craft an immunity provision when it so desired."  Maj. Op. at 20.  But § 7422, unlike §§ 3202(b) and 3403, is not primarily an immunity provision for employers.  Section 7422(f) provides that a tax refund suit "may be maintained only against the United States and not against any officer or employee of the United States (or former officer or employee) or his personal representative."  Although the first clause of § 7422(f) implicitly confers immunity on employers by requiring claimants to bring suit against the United States instead, the remainder of the provision makes clear that its principal goal is to immunize officers or employees of the United States from suit.  And, to the extent § 7422 renders § 3102(b) redundant if the latter is read as an immunity provision, the same is true with regard to §§ 3202(b) and 3403.  Faced with the choice to read a statute as either redundant or nonsensical, we have no choice but to take the former route. *Cf. Chickasaw Nation v. United States*, 534 U.S. 84, 94–95 (2001) ("The canon requiring a court to give effect to each word '*if possible*' is sometimes offset by the canon that permits a court to reject words 'as surplusage' if 'inadvertently inserted or if repugnant to the rest of the statute.'" (quoting Karl N. Llewellyn, THE COMMON LAW TRADITION 525 (1960)).

## C.

The majority finally notes that the legislative history of § 3102(b) indicates that the provision indemnifies employers "against any claims and demands with respect to that part of the wages of the employee which he withheld, *up to the correct amount* withheld and paid to the United States." H.R. REP. NO. 74-615, at 30 (1935) (emphasis added). The emphasized language, the majority contends, "indicates that Congress understood 'indemnification' to contemplate the payment of money." Maj. Op. at 21.

The reference to the "amount" paid does not imply that § 3102(b) contemplates reimbursement. As enacted, § 3102(b) provides that the employer "shall be indemnified . . . for the amount of" taxes paid. Sections 3202(b) and 3403, which are undoubtedly immunity provisions, similarly specify that the employer "shall not be liable . . . for the amount of" taxes paid. Section 3102(b) should be read the same way.

## III.

For the reasons above, I would affirm the thoughtful decision of the Court of Federal Claims. I respectfully dissent.